# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

LONE STAR TECHNOLOGICAL
INNOVATIONS, LLC,

        Plaintiff,

    v.

ACER, INC. ET AL,

        Defendants.

Civil Action No. 6:15-cv-973-JRG-JDL

**LEAD CASE**

**JURY TRIAL DEMANDED**

## <u>DEFENDANTS' RESPONSIVE CLAIM CONSTRUCTION BRIEF</u>

**TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................ 1

II.    DEFENDANTS' PROPOSED CONSTRUCTION OF CLAIM TERMS ...................... 2

    A.    "A Set of Individual Color Look-Up Tables" ('012 patent, claim 1 and dependent claims) ........................................................................................ 2

    B.    "Individual Color Control Functions" ('012 patent, claim 1) .............................. 6

    C.    "Color Control Parameters" ('012 patent, claim 1) ........................................ 10

    D.    "Whereby All Other Colors of the Digital Video Input Image Remain Unchanged" ('012 patent, claim 1) ................................................................ 13

    E.    "Individual Color" ('012 patent, all claims; '435 patent, claims 1, 17, and dependent claims) ........................................................................................ 15

    F.    "Characterizing" ('012 patent, claim 1; '435 patent, claim 1) ............................ 21

    G.    "Without Affecting the Hue or the Saturation of Any Other Individual Color" ('435 patent, claims 1 and 17) ............................................................ 24

    H.    "Arbitrary Interval of Integers" ('435 patent, claims 5 and 21) ........................ 25

    I.    "Completely Independent and Separate" ('435 patent, claims 8, 9, 24, and 25) .................................................................................................................. 26

    J.    "Viewer" ('435 patent, claim 17) .................................................................. 27

III.    CONCLUSION ............................................................................................... 28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbot Labs v. Novapharm Ltd.*
    323 F.3d 1324 (Fed. Cir. 2003).................................................................7

*Allergan Sales, LLC v. Sandoz Inc.*,
    No. 2:12-cv-207-JRG, 2016 WL 1224868 (E.D. Tex. Mar. 29, 2016)....................18

*Amgen Inc. v. Hoechst Marion Roussel, Inc.*,
    314 F.3d 1313 (Fed. Cir. 2003).............................................................11

*Braintree Labs. v. Novel Labs., Inc.*,
    749 F.3d 1349 (Fed. Cir. 2014)..........................................................7, 15

*David Netzer Consulting Eng'r LLC v. Shell Oil Co.*,
    824 F.3d 989 (Fed. Cir. 2016)..............................................................6

*Eon Corp. IP Holdings v. Silver Spring Networks*,
    815 F.3d 1314 (Fed. Cir. 2016)...........................................................12

*Interval Licensing LLC v. AOL, Inc.*,
    766 F.3d 1364 (Fed. Cir. 2014)...........................................................26

*Laitram Corp. v. Morehouse Indus.*,
    143 F.3d 1456 (Fed. Cir. 1998).............................................................8

*Markman v. Westview Instruments, Inc.*,
    517 U.S. 370 (1996).................................................................4, 5, 10

*Metaswitch Networks Ltd. v. Genband USA LLC*,
    No. 2:14-cv-744-JRG-RDP, 2015 WL 11197822 (E.D. Tex. Aug. 10, 2015) ........17

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
    134 S. Ct. 2120 (2014)..................................................................1, 11

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
    521 F.3d 1351 (Fed. Cir. 2008)...........................................................12

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) ..................................................5, 6, 9, 11, 12

*Pozen Inc. v. Par Pharm., Inc.*,
    719 F. Supp. 2d 718 (E.D. Tex. 2010).....................................................7, 15

*SkinMedica, Inc. v. Histogen Inc.*,
  727 F.3d 1187 (Fed. Cir. 2013)............................................................................4

*Vitronics Corp. v. Conceptronic, Inc.*,
  90 F.3d 1576 (Fed. Cir. 1996)............................................................................5

**Statutes**

35 U.S.C. § 112(2) ............................................................................ *passim*

## I.    INTRODUCTION

Defendants Acer Inc., Acer America Corporation and Sharp Electronics Corporation, (collectively, "Defendants") respectfully submit this Responsive Claim Construction Brief. Plaintiff Lone Star Technological Innovations, LLC's ("Plaintiff") claim construction positions are untenable and should be rejected.

This case involves two related patents by a single inventor in the field of color control in digital video images – U.S. Patent No. 6,122,012 (the "'012 patent") (Dkt. No. 50-1) and U.S. Patent No. 6,724,435 (the "'435 patent") (Dkt. No. 50-2). Many of the asserted patent claims use terminology that fails to put the public on notice as to what is covered by the patents. In a number of claims, the patentee uses terms that are either never defined or defined in conflicting manners within the specification. These claims fail in light of the indefiniteness standard set forth in *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120 (2014).

As to the terms that can and should be construed, Plaintiff avoids offering constructions which would assist in informing the jury, instead seeking no construction or plain and ordinary meaning for many of the disputed terms. For example, Plaintiff repeatedly states in a conclusory manner that a person of ordinary skill in the art would understand the term, without actually saying or discussing how or what this artisan would understand the term to be. As for the terms where Plaintiff does offer a construction, Plaintiff fails to take proper account of the intrinsic record, and instead chooses to rely heavily on extrinsic evidence. Defendants' proposed constructions, conversely, define the terms in light of the intrinsic evidence and in a way that would be helpful to a jury.

For the reasons discussed below, Defendants respectfully request that the Court adopt Defendants' proposed constructions of the disputed claim terms and find certain asserted claims of the asserted patents indefinite and invalid.

## II.    DEFENDANTS' PROPOSED CONSTRUCTION OF CLAIM TERMS

### A.    "A Set of Individual Color Look-Up Tables" ('012 patent, claim 1 and dependent claims)

| Defendants' Proposed Construction | Plaintiff's Proposed Construction |
|---|---|
| This term is indefinite under 35 U.S.C. § 112(2) to the extent that "individual color" is indefinite under 35 U.S.C. § 112(2). <br><br> a set of tables, each mapping an input individual color to an output individual color | Plain and ordinary meaning <br><br> Or, in the alternative: <br><br> "a set of individual color [arrays or tables of values][1] |

The term "a set of individual color look-up tables" is indefinite because the term "individual color" is indefinite, as explained in Section II.E.  Should "individual color" be found definite, then this term should be construed as "a set of tables, each mapping an input individual color to an output individual color."  Defendants' proposed construction is supported by the intrinsic evidence and should be adopted.

Plaintiff's assertion that "Defendants' proposed construction [] has no support in the intrinsic record" is incorrect and ignores the express disclosure found in the specification.  Opening Brief at p. 5.  The '012 patent provides the following definition of a look-up-table ("LUT"):

> The LUTs are defined such that *each of the output image chromatic components*, Cr' and Cb', *is related to the both input image chromatic components*, Cr and Cb, and correspondingly, *each of the output image chromatic pixel values*, Cr'(i,i) and Cb'(i,j) *is related to both input image chromatic pixel values*, Cr(i,j) and Cb(i,j).

'012 patent at 5:1-7 (emphasis added).  The '012 patent explains that a LUT is used to relate input image chromatic components (Cr and Cb) to output image chromatic components (Cr' and Cb').  As explained at 5:1-7 of the '012 patent, the specification defines a LUT as relating

---

[1] In the Parties' Joint Claim Construction and Pre-hearing Statement, Plaintiff did not offer an alternative proposed construction.  (Dkt. No. 48-1).

specific image pixels of an input image at coordinates (i,j) to corresponding output image pixels at coordinates (i,j). This manner of relating specific input coordinates to corresponding output coordinates is understood as "mapping" to a person of ordinary skill in the art. *See* Richardson Decl. ¶¶ 21-23 (Dkt. No. 50-4). *See also* Electronic Imaging Technology, edited by Edward R. Dougherty and published in 1999 (Ex. A). Simply put, the LUTs, as described in the '012 patent, perform a mapping from input image chromatic components to corresponding output image chromatic components.

Plaintiff and Plaintiff's expert, Dr. Menczel, do not refute the fact that the LUTs are used to perform a mapping of specific inputs to corresponding outputs. Indeed, Dr. Menczel agrees.

> 13 For any given input to look-up table 1,
> 14 there will be a single and specific output; is that
> 15 correct?
> 16 A Correct.
> 17 Q Okay. Now, is that true for look-up tables
> 18 2, 3, and 4 as well?
> 19 A Correct

Menczel Deposition at 55:13-19 (Ex. B).

> 13 Q (By Mr. Ting) Okay. But the look-up tables
> 14 are used to map an input color to an output individual
> 15 color, correct?
> 16 A In a complex way.

Menczel Deposition at 56:13-16. Rather, Plaintiff's position is that because the LUTs "contain complex formulas," Defendants' proposed constructions conflict with the patent specification. Plaintiff, however, provides no explanation for why or how Defendants' construction conflicts with the express teaching of the specification. Dr. Menczel's declaration provides no additional support for Plaintiff's position as it similarly offers only a bare conclusion with no explanation. Menczel Decl. ¶¶ 21-22 (Dkt. No. 50-3). In fact, Plaintiff's assertion that the LUTs "contain complex formulas" seems to be misleading, as explained by Dr. Menczel.

11 Q And is it your opinion that the complex
12 formulas are a part of the look-up tables?
13 A No. Look-up table are used as part of the
14 formulas. Not the other way around.

Menczel Deposition at 59:11-14.  The "complex formulas" that Plaintiff points to as a basis for rejecting Defendants' proposed construction are not even part of the individual color look-up tables.  Indeed, in attempting to refute Defendants' proposed construction, Plaintiff seeks to import limitations and subsequent steps within the '012 patent.

Plaintiff suggests that the term does not require any construction and that plain and ordinary meaning is sufficient because the '012 patent describes the look-up-tables as "simple look-up-tables."  Opening Brief at p. 4.  However, this argument is contradicted paragraphs later when Plaintiff states that the LUTs described in the '012 patent "contain complex formulas which far exceed" Defendants' construction.  Opening Brief at p. 5.  Indeed, if the LUTs as disclosed in the '012 patent are as "complex" as Plaintiff suggests, then it is the Court's duty to construe the term to minimize any dispute or confusion before a jury.  *Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996).  Furthermore, in support of a plain and ordinary meaning, Plaintiff provides a conclusory statement that a person of ordinary skill in the art would understand the term.  Opening Brief at p. 3.  Absent any mention of the intrinsic record or substantive explanation, Plaintiff's proposed "plain and ordinary meaning" should be disregarded.  *SkinMedica, Inc. v. Histogen Inc.*, 727 F.3d 1187, 1208-1210 (Fed. Cir. 2013) (rejecting a "ordinary meaning" construction and finding that expert opinions are given "no weight" if "they are conclusory and incomplete; they lack any substantive explanation tied to the intrinsic record; and they appear to conflict with the plain language of the specification.")

In the alternative, Plaintiff asks that the Court construe this term as "a set of individual color [arrays or tables of values]" but offers nothing from the intrinsic evidence in support.

Opening Brief at p. 5-6.  Plaintiff's sole reliance on extrinsic evidence in support of its alternative construction without looking at the intrinsic evidence is unpersuasive and improper. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996) ("It is well-settled that, in interpreting an asserted claim, the court should look first to the intrinsic evidence of record, *i.e.,* the patent itself, including the claims, the specification and, if in evidence, the prosecution history.  Such intrinsic evidence is the most significant source of the legally operative meaning of disputed claim language.") (*citing Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995), aff'd, 517 U.S. 370, 116 S. Ct. 1384, 134 L. Ed. 2d 577 (1996)).  It is well established that extrinsic evidence is "less significant than the intrinsic record in determining the legally operative meaning of claim language" and "unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1317, 1319 (Fed. Cir. 2005) (*en banc*) (internal citations omitted).

After failing to find any intrinsic evidence in support of its proposed construction, Plaintiff attempts to support its construction by mischaracterizing a brief discussion by Dr. Richardson generally explaining what a LUT is in the realm of computer processing and not in the context of the '012 patent specifically.  Opening Brief at p. 6; Richardson Decl. ¶ 13. However, even this general discussion by Dr. Richardson supports Defendants' proposed construction.  As Dr. Richardson explains, "a LUT is an array into which values are input and indexed for retrieval." Richardson Decl. ¶ 13.  Therefore, an "individual color look-up table" would be where individual color values are inputted, indexed, and then subsequently retrieved to create output individual color values.  In sum, "a set of tables, each mapping an input individual color to an output individual color."

Furthermore, Plaintiff's alternative construction is flawed in that it suggests that any arbitrary set of numbers in a table format or array can be implemented in the '012 patent. This is simply untrue and goes against what is disclosed in the '012 patent. The '012 patent identifies four specific and "complex" look-up-tables that would be applicable in the patent and shows that not any "array or table of values" will work. '012 patent at 5:10-6:26; 15:56-62. Plaintiff's alternative construction of "a set of individual color look-up-tables" that is not only unsupported by the intrinsic evidence, but also goes against it, should be rejected. *David Netzer Consulting Eng'r LLC v. Shell Oil Co.*, 824 F.3d 989, 996-997 (Fed. Cir. 2016) (accepting Defendant's proposed construction, and finding that Plaintiff's "conflicting extrinsic evidence, which does not compel a different construction . . . may not be used to contradict claim meaning that is unambiguous in light of the intrinsic record").

### B. "Individual Color Control Functions" ('012 patent, claim 1)

| Defendants' Proposed Construction | Plaintiff's Proposed Construction |
|---|---|
| This term is indefinite under 35 U.S.C. § 112(2) to the extent that "individual color" is indefinite under 35 U.S.C. § 112(2). | No construction necessary |
| | Or, in the alternative: |
| functions that each operate on linear combinations of values of the input image chromatic components for an individual color | functions used for calculating values for digitized selective control of an individual color |

The term "individual color control functions" is indefinite because the term "individual color" is indefinite, as explained in Section II.E. Alternatively, should the Court find "individual color" to be definite, the term should be construed as "functions that each operate on linear combinations of values of the input image chromatic components for an individual color." Defendants' construction is supported by the intrinsic evidence and takes into account the entire claim within the context of the specification. *Phillips v. AWH Corp.*, 415 F.3d at 1317, 1319. The '012 patent provides the following description of "individual color control functions":

Sets **of individual color control functions are** subsequently used for digitized selective control of individual colors, *by operating on linear combinations of values of the input image chromatic components*, Cr(i,j) and Cb(i,j).

'012 patent at 6:29-32 (emphasis added). Defendants' proposed construction follows, nearly verbatim, the '012 patent's own definition of "individual color control functions." As the courts have held, when a patentee has chosen to be his own lexicographer, the patentee's definition from the specification should be read into the claim. *Abbot Labs v. Novapharm Ltd.,* 323 F.3d 1324, 1330 (Fed. Cir. 2003). *See also Braintree Labs. v. Novel Labs., Inc.*, 749 F.3d 1349, 1355-56 (Fed. Cir. 2014); *Pozen Inc. v. Par Pharm., Inc.*, 719 F. Supp. 2d 718, 726 (E.D. Tex. 2010) ("where the inventor has clearly defined his own terms, the inventor's lexicography will govern the construction."). The '012 patent defines the operation of the individual color control functions in relation to the '012 patent and that definition, as proposed by Defendants, should be adopted as the proper construction by the Court.

In its brief, Plaintiff argues that Defendants' proposed construction is inappropriate because it is in reference to a preferred embodiment that limits the invention to only a single color space – the YCrCb color space. Opening Brief at p. 7-8. But Defendants' proposed construction is not limited to the YCrCb color space, and thus this argument is flawed for several reasons. Firstly, Defendants and Dr. Richardson make no mention of the YCrCb color space. Richardson Decl. ¶¶ 24-26. Although the term "chromatic components" is a term used with the YCrCb color space, it is not restricted to just that one color space. The term "chromatic component" is simply a term used to differentiate a color's chroma component from the luma component and is used in other color spaces such as YUV and YIQ. *See, e.g.,* '435 patent at 1:50-54 ("real time digital video images feature colors or color components characterized by linear combinations of the chromatic parts, Cr and Cb, also known in the art as U and V, respectively, in YCrCb or YUV luminance/chromatic color space, respectively"). Even

Plaintiff's expert, Dr. Menczel admits that the use of the phrase "chromatic components" is not limited to just the YCrCb color space. *See* Menczel Deposition at 66:17-67:10.

Secondly, the fact that the patentee's definition of "individual color control functions" appears in the portion of the specification that discusses the only embodiment mentioned within the patent does not preclude the inclusion of that definition in the construction of the term. This is especially true when there is no other definition offered for "individual color control functions" and no other embodiments are discussed. *Laitram Corp. v. Morehouse Indus.*, 143 F.3d 1456, 1463 ("[T]he asserted claims will bear only one interpretation" when all embodiments are in accord; "[w]hile claims are not necessarily limited by the written description, it is relevant that nothing in the written description suggests" an interpretation to the contrary). The '012 patent describes its only example as its preferred embodiment, but offers no other examples to suggest any other possibility. As Plaintiff's expert testified, the '012 patent is "only described in the YCBCR" color space. Menczel Deposition at 64:7-14. As such, it is not inappropriate for the Court to rely on this one embodiment for guidance in construing this claim.

Lastly, though Defendants' construction does not expressly limit the invention to just the YCrCb color space, such a limitation, if Defendants chose to do so, would be in line with the specification of the '012 patent and subsequent disclosures by the inventor himself. The '435 patent states during its discussion of the '012 patent that:

> Additionally, the disclosed method is based on using an algorithm which is particularly described with respect to real time digital video images featuring colors or color components characterized by linear combinations of the chromatic parts, Cr and Cb, or, U and V, in YCrCb or YUV luminance/chromatic color space, and ***there is no particular description with respect to other formats of real time digital video images, such as the RGB or YCM color space formats***.

'435 patent at 2:43-51 (emphasis added). Indeed, a limitation of the claims of the '012 patent to just the YCrCb color space would not be inappropriate as that is exactly what the inventor of the

'012 patent claimed in the subsequent '435 patent.  Furthermore, as explained above, the *only* embodiment that the '012 patent discloses and describes is in reference to the YCrCb color space and to no other color space.

Plaintiff again argues that no construction is necessary for this term by concluding that a person of ordinary skill in the art would understand the words themselves.  Opening Brief at p. 6-7.  Plaintiff offers no explanation as to who this person would be or how and why they would understand this term.  Instead, Plaintiff misguidedly looks only at the individual words of the disputed term separately and in total isolation to the claim and the specification and concludes that "a person of ordinary skill in the art would be readily familiar."  Opening Brief p. at 7.  As such, Plaintiff's suggestion that no construction is necessary should be ignored.  *Phillips v. AWH Corp.*, 415 F.3d at 1313 ("We cannot look at the ordinary meaning of the term . . . in a vacuum.  Rather, we must look at the ordinary meaning in the context of the written description and the prosecution history.") (*citing Medrad, Inc. v. MRI Devices Corp.,* 401 F.3d 1313, 1319 (Fed. Cir. 2005)).

Plaintiff then argues, in the alternative, that "individual color control functions" should be construed as "functions used for calculating values for digitized selective control of an individual color."  In its construction, Plaintiff cherry picks phrases from separate sentences while ignoring portions that explain exactly what the color control functions do and how they operate.  Opening Brief at p. 7.  The '012 patent states that:

> In Step 4, there is definition of color control functions, to be used for calculating values *in each set of individual color LUTs*.  Sets of individual color control functions *are subsequently* used for digitized selective control *of individual colors, by operating on linear combinations of values of the input image chromatic components, Cr(i,j) and Cb(i,j)*

'012 patent at 6:27-32 (emphasis added).  Plaintiff's alternative construction disregards portions of the specification that give guidance to a proper construction.  As such, Plaintiff's proposed

construction should be ignored.

## C. "Color Control Parameters" ('012 patent, claim 1)

| Defendants' Proposed Construction | Plaintiff's Proposed Construction |
|---|---|
| The change of the output image chromatic component from the input image chromatic component for a specific color | Plain and ordinary meaning<br><br>Or, in the alternative:<br><br>variables that are given a value for a color control function |

The term "color control parameters" should be construed as "the change of the output image chromatic component from the input image chromatic component for a specific color." Defendants' construction is consistent with what is disclosed in the '012 patent and gives meaning to the term that would be helpful to a jury. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996). The '012 patent provides that:

> there is a corresponding set of four Tangent color control parameters, whereby, in each set, two Tangent color control parameters, Tangent$^{Cr'}$ – Color – Cr, and Tangent$^{Cr'}$ – Color – Cb, appear in the color control functions **for relating the output image chromatic component, Cr', to input image chromatic components, Cr and Cb,** and two Tangent color control parameters, Tangent$^{Cb'}$ –Color– Cb, and Tangent$^{Cb'}$ – Color – Cr, appear in the color control functions **for relating the output image chromatic component, Cb', to input image chromatic components, Cr and Cb.**

'012 patent at 8:25-35 (emphasis added). As the '012 patent explains, the color control parameters are "**for relating** the output image chromatic component . . . to input image chromatic components," or in other words, is the change of the output image chromatic component from the input image chromatic component. *Id.*; Richardson Decl. ¶ 28. Defendants' proposed construction follows the intrinsic record and defines what a "color control parameter" does in the context of the '012 patent.

Plaintiff's assertion that "the specific manner in which color control parameters are used is neither specified nor claimed" is perplexing in that, in making this assertion, Plaintiff seems to

suggest that the term may be indefinite or inconsequential.  Opening Brief at p. 8.  *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2124, 189 L. Ed. 2d 37 (2014) ("a patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention").  Next, Plaintiff claims Defendants' proposed construction is flawed because it "improperly collaps[es] the other express limitations of claim 1."  Opening Brief at p. 9.  Plaintiff cites to *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313 (Fed. Cir. 2003) in support of its argument.  *Amgen Inc.* is inapposite to the issue at hand.  As Plaintiff asserts, Defendants' construction touches on the ideas of other ***claim elements within the same claim***. *Amgen Inc.*, however, stands for the proposition that a limitation cannot be read ***from one claim into another claim***.  When construing a claim term, the term should be construed in light of the entire claim, including other elements within the same claim.  *Phillips v. AWH Corp.*, 415 F.3d at 1313 ("the claim term [is read] not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification").  Defendants' proposed construction does exactly that.

Plaintiff asserts that "to construe 'color control parameters' to mean 'changes in values' is incorrect" because "those values need not change."  Opening Brief at p. 9.  Plaintiff misrepresents Defendants' proposed construction.  Defendants' proposed construction of "color control parameters" is "the change" and not "a change."  "The change" could be a positive change, or could be no change.  This idea is in line with the specification of the '012 patent, where the '012 patent defines "color control parameters" as "real positive parameters, greater than ***or equal to zero***." '012 patent at 8:19-20 (emphasis added).

Plaintiff then, again, argues that Defendants attempt to limit the invention to just the

YCrCb color space. Opening Brief at p. 9-10. As explained above in Section II.B, the term "chromatic components" is used in reference to various color spaces and not just the YCrCb color space. *See also* Richardson Decl. ¶ 28 ("Thus, the color control parameters are simply the changes in the chromatic components, ***such as*** Cr and Cb."). Furthermore, as explained previously, a limit to the YCrCb color space would not be inappropriate if Defendants chose to do so, as shown by the '012 patent's specification and as explained by the named inventor of the patent. '435 patent at 2:43-51.

Plaintiff also attempts again to claim that plain and ordinary meaning is appropriate and that no construction is necessary and relies solely on extrinsic evidence. Opening Brief at p. 8. As Dr. Menzel admitted, in analyzing the term "color control parameters," Dr. Menzel <u>only</u> looked at the claim term itself and the IEEE Standard Dictionary of Electrical and Electronic Terms (1993) Fifth Edition. Menzel Deposition at 71:11-18. Plaintiff also bases this assertion by looking at the individual words in a vacuum with disregard to the rest of the claim term and claim. This is clearly inappropriate. "The ordinary meaning of a claim term is not 'the meaning of the term in the abstract.' Instead, the 'ordinary meaning' of a claim term is its meaning to the ordinary artisan after reading the entire patent." *Eon Corp. IP Holdings v. Silver Spring Networks*, 815 F.3d 1314, 1320 (Fed. Cir. 2016) (*citing Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005)). Plaintiff offers no intrinsic evidence in support of a plain and ordinary meaning, and as such, should not be adopted. *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1361 (Fed. Cir. 2008).

Plaintiff also offers an alternative construction of "variables that are given a value for a color function." However, Plaintiff again relies solely on extrinsic dictionaries and concludes that "[o]ne of ordinary skill in the art would readily understand" the word "parameter." Opening

Brief at p. 8. Plaintiff identifies no support from the intrinsic record or further discussion. As such, Plaintiff's proposed alternative construction should be disregarded.

### D. "Whereby All Other Colors of the Digital Video Input Image Remain Unchanged" ('012 patent, claim 1)

| Defendants' Proposed Construction | Plaintiff's Proposed Construction |
|---|---|
| whereby all other pixels of the digital video input image without the same color component values remain unchanged | whereby all other colors of the digital video input image, without the same color component values remain unchanged |

The term "whereby all other colors of the digital video input image remain unchanged" is indefinite because the term "individual color" is indefinite, as explained in Section II.E. However, should "individual color" be found definite, then this term should be construed as "whereby all other pixels of the digital video input image without the same color component values remain unchanged." Defendants' proposed construction lends clarity to the claim language by specifying, consistent with the claims and the specification of the '012 patent, that the claimed color manipulation operates on *pixels*. Given the lack of clarity surrounding the term "color" as discussed further below, Defendants' construction is necessary to render this claim term understandable.

The specification makes clear that the color manipulation operates at the pixel level. For example, "[e]ach input image pixel value, ***defined from the chromatic part of the video input image***," is assigned an address to be operated on by values in individual color LUTs. '012 patent at 1:66-2:2 (emphasis added); *see also id.* at 4:30-32. Thus, pixels themselves are defined in terms of color. Further, the color manipulation is achieved by changing input pixels to output pixels. *Id.* at 2:58-63. This is clear from the language of claim 1, where the step of "determining values of pixels in said target ouput image" is followed immediately by the step of "displaying said target output image." *Id.* at Claim 1. The target output image, which is comprised of pixels,

"includes a change in an individual color . . . whereby all other colors of the digital video input image remain unchanged." *Id.* Thus, the alleged invention is accomplished using pixels, not "colors" in the abstract. Specifically, output image pixel values are determined by specific color component combinations, and only those pixels with the specific combination to be operated upon will be affected." Richardson Decl. ¶¶ 31-32.

Further, Plaintiff's expert, Dr. Menczel, admitted that the '012 patent is implemented by controlling colors through the change of pixels, and was unable to identify any implementation in which changing colors would not be accomplished by changing pixels:

> 18 Q If you're changing a color in a video
> 19 display, what you're doing is changing the pixels that
> 20 are expressing that color, right?
> 21 A If you -- that -- the implementation may use
> 22 color pixels. But that's implementation only.
> 1 Q That's implementation only?
> 2 A Yeah. The document, this implementation,
> 3 shows you how to take bits, because you have pixels,
> 4 and change them, either by look-up table or directly,
> 5 depends in the patent that we are talking.
> 6 Q What other implementations are there that
> 7 would allow to you change colors without changing
> 8 pixels?
> 9 A There -- there may be. There may not be.

Menczel Deposition at 97:18 – 98:9.

In light of this, Plaintiff's efforts to distinguish "color" from "pixels" on purely linguistic grounds is unhelpful. Opening Brief at p. 10-11. While the specification does use the terms separately, the claims and the specification are also clear, consistent with Dr. Menczel's testimony, that color is manipulated *in the form of pixels*. Pixels are defined by color, and thus changing color can only be accomplished by changing pixels corresponding to the color targeted for change. Thus, Defendants' proposed construction is proper.

**E.** **"Individual Color"** (''012 patent, all claims; '435 patent, claims 1, 17, and dependent claims)

| Defendants' Proposed Construction | Plaintiff's Proposed Construction |
|---|---|
| This term is indefinite under 35 U.S.C. § 112(2). Should the Court find that this term is definite, Defendants propose the following construction: | Not indefinite. A range of values of a particular color Or, in the alternative: |
| a specific linear combination of color components such as red, green, blue, yellow, cyan and magenta | linear combinations of color components such as red, green, blue, yellow, cyan and magenta |

The term "individual color" is central to the alleged inventions of both the '012 patent and the '435 patent and yet is never defined in a coherent manner in either specification. The closest the specifications come to defining this term is the common inventor's effort to explicitly define the term as a linear combination of base colors or such as red, green, blue, yellow, cyan and magenta. *See* '012 patent at 1:31-34 ("Hereinafter, an individual color represents a linear combination of the base colors, whereby the base colors feature red[,] green, blue, yellow, cyan and magenta."); '435 patent at 1:19-22 ("Herein, an 'individual color' represents a linear combination of colors or color components, such as red, green, blue, yellow, cyan, and magenta . . . ."). Ordinarily, a "patentee's lexicography must govern the claim construction analysis." *Braintree Labs. v. Novel Labs., Inc.*, 749 F.3d 1349, 1355-56 (Fed. Cir. 2014); *see also Pozen Inc.v. Par Pharm., Inc.*, 719 F. Supp. 2d 718, 726 (E.D. Tex. 2010). Here, however the patentee's definition makes no sense in the context of the specification, as discussed further below. Rather than attempting to salvage the patentee's own definition, Plaintiff concocts an entirely new definition with no support whatsoever in the specifications or the extrinsic evidence. Thus, the Court should hold that the term "individual color" is indefinite, or alternatively adopt the patentee's own definition.

The patentee's "combination" definition of "individual color" is inconsistent with the descriptions of the alleged inventions described in the specifications of each patent. In both patents, individual color *components* – *i.e.*, the base colors red, green, blue, yellow, cyan and magenta – are controlled, not linear combinations of components. Richardson Decl. ¶ 38. For example, the method described in the '012 patent manipulates the individual chromatic components Cr and Cb in order to control an "individual color." *See, e.g.*, '012 patent at 4:18-63. But manipulating these chromatic components will affect *all* linear combinations that contain either component, not a single "individual color" as defined in the specification. Richardson Decl. ¶ 36.

Furthermore, the control of an "individual color" as described above suggests that an "individual color" is not a "linear combination of the base colors" such as red, green, blue, yellow, cyan, and magenta, but is instead a combination of chromatic components Cr and Cb. *Id.* ¶ 37. For example, the '012 patent at 4:66-5:1 defines "individual color" as a "color [that] is composed of a linear combination of the input image chromatic components Cr and Cb" contrary to the definition provided at 1:32-34 of the '012 patent. Chromatic components Cr and Cb are not represented by a linear combination of the base colors, such as red, green, and blue (or their complementary colors, yellow, cyan, and magenta). As explained by Defendants' expert, Dr. Richardson, in his book, "Video Codec Design", each chromatic component Cr and Cb is a difference between a base color (red or blue) and a luminance or weighted average of three base colors (red, green and blue). Richardson Decl. ¶ 37. Operating on an "individual color" that is a "linear combination of . . . Cr and Cb" would require a conversion that the '012 patent specifically states should not be done. *Id.* "Application of this method to video images precludes the need to convert video components (e.g., YCrCb) into RGB (red, green, blue)

components.).  '012 patent at 2:6-8.

Similarly, in the '435 patent, color is controlled by manipulating hue or saturation.  *See, e.g.*, '435 patent at 7:15-30.  But manipulating hue or saturation necessarily affects multiple colors, not an individual linear combination of colors.  Richardson Decl. ¶ 38.  Furthermore, the '435 patent purports to give examples of identifying input image pixels having an "individual color whose hue or saturation was selected to be independently changed."  '435 patent at 10:25-11:13.  However, the examples given each refer to identifying input image pixels having a base color as the "individual color", where the base color is red, green, blue, yellow, cyan or magenta.  Clearly a specific base color is different from a linear combination of (plural) base colors.

Accordingly, neither the '012 patent nor the '435 patent uses the term "individual color" in a coherent manner.  Both patents purport to define "individual color" as a linear combination of color components, but then describe the invention in a manner that makes it impossible to control an "individual color" as claimed.  Richardson Decl. ¶ 40.  The term is therefore indefinite.  *Id.* ¶ 41.  See, e.g., *Metaswitch Networks Ltd. v. Genband USA LLC*, No. 2:14-cv-744-JRG-RDP, 2015 WL 11197822, at *17 (E.D. Tex. Aug. 10, 2015) ("contradictory claim language can render claims internally inconsistent and therefore indefinite").

Recognizing the weakness of the patentee's own definition, Plaintiff proposes the circular definition "[a] range of values of a particular color."  Opening Brief at p. 11.  Alternatively, Plaintiff pluralizes the patentee's definition in an attempt to read "individual color" as "more than one individual color," thereby vitiating the word "individual" altogether.  Neither approach is sound, and both proposed constructions are themselves indefinite.

Plaintiff engages in semantic acrobatics by attempting to show that a single "individual color" is actually a range of multiple colors and not a "particular color" or a "specific color."

Opening Brief at p. 13. But this argument requires the Court and the jury to discern between "individual color," "particular color," and "specific color," which is a hopeless task.[2]

In any case, as Plaintiff acknowledges, selecting to adjust the color "red" and increase the saturation "would increase the saturation of *all* shades of red," *i.e. multiple colors. Id.* at 13-14. Plaintiff believes that this supports their construction, but all this does is prove noninfringement. Plaintiff openly acknowledges that it is impossible to adjust the saturation of an "individual color." Rather, any adjustment necessarily impacts *multiple* colors.

Plaintiff then makes a self-defeating argument from the '012 patent specification. Plaintiff asserts that "red, green, blue, yellow, magenta, and cyan" are "individual colors." However, the quote on which Plaintiff relies identifies those units as "individual color *components*," *i.e.* the units that are combined in a linear fashion to create an "individual color" under the patentee's own definition. Opening Brief at p. 14 (quoting '012 patent at 12:52-57) (emphasis added).

Unsurprisingly, Plaintiff does not find any support in the specification for its contention that an "individual color" is a "range" of colors. Indeed, rather than cite the specification, Plaintiff seeks to support its claim construction using the operation of one of Defendants' Accused Products. Opening Brief at p. 13-14. But infringement is irrelevant to claim construction. *See Allergan Sales, LLC v. Sandoz Inc.*, No. 2:12-cv-207-JRG, 2016 WL 1224868, at *6 (E.D. Tex. Mar. 29, 2016). Plaintiff's argument should be rejected out of hand.

Plaintiff fares no better with the '435 patent. Here, plaintiff relies on a set of equations that, again, manipulate the "individual color components" referred to in the '012 patent, not colors themselves. Opening Brief at p. 15-16. Dr. Menczel acknowledged this. Menczel

---

[2] Plaintiff also makes an argument concerning the undefined color "fire engine red," which Dr. Menczel admitted is an unhelpful example. Menczel Deposition at 87:6-7.

Deposition at 94:14 – 95:1. In an effort to salvage his proposed construction, Dr. Menczel then asserted, baselessly, that "color" and "color component" are interchangeable. *Id.* at 95:6-8. But this renders "individual color" impossible to define – an individual color is comprised of color components, so if a color component is an individual color then an individual color defines itself.

Further, the equations of the '435 patent do not appear in the '012 patent, and thus cannot support a common understanding of "individual color" for both patents. Indeed, Dr. Menczel admitted that the term "individual color" should be given the same meaning in both patents. *Id.* at 95:11-14. Thus, the equations of the '435 patent do not demonstrate that an "individual color" is a range of colors.

Finally, Plaintiff misunderstands Defendants' expert testimony. Dr. Richardson applied the alternative construction of "individual color" provided by the patentee (which Plaintiff rejects) in the context of other claim terms containing that term. This does not, however, alter Dr. Richardson's ultimate conclusion that "individual color" is indefinite in the context of the patents as a whole for the reasons described above. Plaintiff is incorrect that Dr. Richardson's testimony is consistent with Plaintiff's construction of "a range of values," and Plaintiff provides no explanation for this bald statement. Opening Brief at p. 17. Further, Dr. Richardson's comment that "manipulating hue or saturation necessarily affects a range of colors, not an individual linear combination of colors" does not mean that an "individual color" can be a "range" of colors, but only that the patents' use of "individual color" makes no sense because individual colors as defined by the patentee *cannot be independently manipulated*.

Importantly, Dr. Menczel's testimony revealed that neither the '012 patent nor the '435 patent provide any guidance as to how to define an individual color. For both patents, Dr. Menczel acknowledged that the "individual color" "red" could be defined broadly enough to

include "orange":

> 3 A If, bearing to the issue, if we define the
> 4 colors as -- can be one color is orange -- is red, and
> 5 then define in explicit, nonmutual color as orange,
> 6 then the orange will not be affected. If the orange
> 7 happened to be part of the red, then the orange will
> 8 be affected. It's all -- all depends on the
> 9 definitions in what color is for every color.

Menczel Deposition at 107:3-9. *See also id.* at 107:13-16 ("It a matter of how far you define the spectrum of red to include, to go far enough, and you contain the orange in red, the orange is part of the red."). Under this implementation, changing the color "red" would *also* change "orange," and this would meet the claims of the '012 patent according to Dr. Menczel"

> 20 Q Okay. So it's possible to implement the
> 21 '012 Patent in a way where the definition of red
> 22 includes orange. So if I adjust red, I'm also
> 1 adjusting orange. Is that accurate?
> 2 MR. LEE: Object to form.
> 3 A If -- if you define red that is very wide,
> 4 define the orange as colors, then that's – that's
> 5 omitted, yeah.
> 6 Q (By Mr. Holohan) Then that's what?
> 7 A That's what it implies.
> 8 Q And that implementation would fall within
> 9 the '012 Patent, right?
> 10 A Yes.

*Id.* at 107:20-108:10. In a telling admission, Dr. Menczel explained that he reached this conclusion "Because the patent '012 or '435 *do not give the way to how to divide the colors. Where is the line.*" *Id.* at 108:10-12. Thus, by Dr. Menczel's own admission, there is *no guidance* as to how an individual color is defined vis-à-vis other colors, and thus *no guidance* as to how one color can be changed without affecting another color. In other words, the '012 and the '435 patent can each be infringed by defining "individual color" as *any* range of colors. This entirely defeats the alleged invention and novelty of the patents and renders all claims indefinite.

The '012 patent and '435 patent make clear that an "individual color" is a specific linear combination of color components such as red, green, blue, yellow, cyan and magenta, but each patent purports to claim methods of changing "individual colors" that cannot – as Plaintiff acknowledges – change such specific linear combinations to the exclusion of other combinations. Plaintiff cannot have it both ways. Either "individual color" is indefinite, or the Court should adopt the patentee's own definition of "individual color" and force Plaintiff to try and prove infringement under the metes and bounds of the patents as drafted.

**F.     "Characterizing" ('012 patent, claim 1; '435 patent, claim 1)**

| Defendants' Proposed Construction | Plaintiff's Proposed Construction |
|---|---|
| This term is indefinite under 35 U.S.C. § 112(2). | Not indefinite.<br><br>Plain and ordinary meaning<br><br>Or, in the alternative:<br><br>specifying |

The term "characterizing" as used in the '012 patent and the '435 patent is indefinite. Claims 1 and 17 of the '012 patent each recite "receiving the digital video input image, featuring pixels," followed by "characterizing the digital video input image and its target output image." Similarly, claim 1 of the '435 patent recites "receiving and characterizing the real time digital video input image featuring input image pixels."

The '012 patent does not adequately explain what is meant by "characterizing," and the term has no plain and ordinary meaning to one of ordinary skill in the art. Richardson Decl. ¶ 44. The '012 patent specification purports to explain the "characterizing" step from the claims at column 4, lines 17-63. However, this description fails to convey to one of ordinary skill in the art what is meant by "characterizing." Richardson Decl. ¶ 44. In particular, in the first substep of the "characterizing" step, the values "Cr and Cb are defined as two chromatic components of a

21

digital video input image at time t, Cr or Cb can be plotted in an input image grid (not shown) having an input image grid coordinate system featuring rows (lines) and columns (pixels)." '012 patent at 4:19-23. But this description does not explain *how* the chromatic components are defined, or what it means to define them. Without this first step, the remaining explanation of "characterizing" does not reasonably inform a person of ordinary skill in the art of the meaning of "characterizing." Richardson Decl. ¶ 44.

Furthermore, in the second substep of the "characterizing" step, it is stated that "Cr(i,j) and Cb(i,j) are defined as digitized pixel values of the input image chromatic components Cr and Cb, respectively, whose position coordinates are (i,j)". However, it is unclear how, if at all, Cr(i,j) and Cb(i,j) in this second substep differ from Cr and Cb specified in the first substep, since the two "defined . . . chromatic components" recited in the first substep are described as capable of being "plotted in an input image grid" and having pixel position coordinates "represented as (i,j)". Richardson Decl. ¶ 44. One of ordinary skill in the art is left unclear as to what is meant by the two substeps (a) and (b) of "characterizing" and how to put these steps into practice. *Id.*

The '435 patent likewise provides no guidance as to what is meant by "characterizing" as a step performed in a method. The specification states only:

> In Step (a) of the method of the present invention, there is receiving and characterizing a real time digital video input image. Preferably, there is receiving a real time digital video input image, I, featuring colors or color components characterized by linear combinations of the basic colors red, green, and blue, in RGB color space, whereby the real time digital video input image, I, features basic colors red, green, and blue, and, complementary colors yellow, cyan, and magenta, in the RGB color space featuring a color based three-dimensional coordinate system.

'435 patent at 6:40-50. But "characterizing" in this sense only describes the colors within the video input image. Richardson Decl. ¶ 45. It says nothing about what is involved in

characterizing the input image itself. *Id.* Accordingly, it is entirely unclear from the claim language and the specification what is meant by "characterizing" how the step of "characterizing the real time digital video input image" is accomplished. *Id.* Thus, the term "characterizing" is indefinite in both the '012 patent and the '435 patent. Richardson Decl. ¶ 46.

Plaintiff's efforts to salvage "characterizing" fail. First, as with "individual color," Plaintiff asserts that Defendants have waived their argument that "characterizing" is indefinite by using that word in an agreed construction of another term. Opening Brief at p. 17-18. But, again, the fact that "characterized" may have meaning in one context does not mean that its appearance in the context of a patent claim has any discernible meaning.

Plaintiff then effectively applies *three different definitions* of "specifying," which is the word Plaintiff asserts is synonymous with "characterizing." According to Plaintiff, "characterizing," "defining," and "assigning" all mean "specifying," but "characterizing" is also defined as "specifying." Opening Brief at p. 19-20. Further, apart from block-quoting large portions of the specifications of both the '012 patent and the '435 patent, Plaintiff's expert makes no effort to explain how these passages elucidate the meaning of "characterizing" or link the word "specifying" with "characterizing" in any way. Menczel Decl. ¶¶ 59-61, 65.

Plaintiff then adds two more definitions of "characterizing" by drawing from extrinsic evidence. Opening Brief at p. 21-22. Neither of these references, however, support Plaintiff's assertion that "characterizing" simply means "specifying." In particular, neither Plaintiff nor its expert explain how these discrete references inform the general understanding of one skilled in the art as to what "characterizing" means. Menczel Decl. ¶¶ 63, 67.

Thus, neither the '012 patent nor the '435 patent shed any meaningful light on what "characterizing" means in the context of the relevant claims, and the term is indefinite.

### G. "Without Affecting the Hue or the Saturation of Any Other Individual Color" ('435 patent, claims 1 and 17)

| Defendants' Proposed Construction | Plaintiff's Proposed Construction |
|---|---|
| This term is indefinite under 35 U.S.C. § 112(2) to the extent that "individual color" is indefinite under 35 U.S.C. § 112(2).<br><br>without affecting the hue or saturation of any other output image pixel[s] with a different individual color | without affecting the hue or the saturation of any other individual color, that was not selected to be changed |

As with the term discussed in Section II.D, *supra*, the dispute over the term "without affecting the hue or the saturation of any other individual color" centers on whether the term should be construed in terms of pixels or abstract colors.

Like the '012 patent, the '435 patent describes and claims the color manipulation functions in terms of pixels. In particular, as in the '012 patent, the color manipulation process involves "input image pixel values . . . identified as having the individual color . . . whose hue or saturation was selected to be independently changed." '435 patent at 5:56-59. Thus, in both patents, pixels are defined in terms of color, and manipulating color is simply manipulating pixels.

Likewise, similar to the '012 patent, the claimed process is accomplished by "determining corresponding output image pixel values for each of said plurality of said input image pixels identified as having said selected individual color in the real time digital video input image" and "displaying a real time digital video output image including said corresponding plurality of said output image pixels." '435 patent, claim 1. Accordingly, Defendants' construction of "without affecting the hue or the saturation of any other individual color" should be adopted for the reasons discussed above in Section II.D.

## H. "Arbitrary Interval of Integers" ('435 patent, claims 5 and 21)

| Defendants' Proposed Construction | Plaintiff's Proposed Construction |
|---|---|
| This term is indefinite under 35 U.S.C. § 112(2). | Not indefinite.<br><br>a range between two whole numbers |

Claims 5 and 21 of the '435 patent recite the limitation, "whereby [] numerical range of said independent color hue control delta value and numerical range of said independent color saturation control delta value corresponds to an arbitrary interval of integers." The delta values in the respective independent claims from which claims 5 and 21 depend simply represent the "extent of change" in hue or saturation of an individual color. Richardson Decl. ¶ 47. Accordingly, claims 5 and 21 purport to set specific limits on the range within which these delta values can be set.

However, the term "arbitrary interval of integers" provides no guidance at all as to what an acceptable range would be. *Id.* ¶ 48. Under the plain and ordinary meaning of "arbitrary," an "arbitrary interval of integers" could be anything from a single integer to an infinite number of integers. *Id.* Dr. Menczel agreed that an arbitrary interval could be an infinite interval:

> 9 Q (By Mr. Holohan) Well, let me ask you: In
> 10 your opinion, what is the upper limit on the range of
> 11 the interval of integers in the '435 Patent?
> 12 A Arbitrary.
> 13 Q So there's no upward limit on what the range
> 14 could be.
> 15 A Yes.

Menczel Deposition at 118:9-15.

Indeed, the specification explicitly states that the invention *cannot* be implemented with an arbitrary interval of integers for hue and saturation values. The specification states:

> *In principle*, the numerical range, represented by an interval, [sl, s2], where sl and s2 are integers, of the independent color saturation control delta value, Sclr, in general, and of each Sr, Sg, Sb, Sy, Sc, and Sm, in particular, is arbitrary. *For*

25

*implementation*, preferably, the numerical range of Sclr, in general, and of each Sr, Sg, Sb, Sy, Sc, and Sm, in particular, is between -1 and + 1, corresponding to the interval [ -1,+ 1 ], which is equivalent to any other interval, [sl, s2], by performing linear or non-linear transformation between these particular intervals.

'435 patent at 8:4-13 (emphasis added). The specification includes a similar description for hue. *Id.* at 7:46-55. Thus, the specification draws a distinction between a theoretical implementation using an arbitrary range and an actual implementation using a discrete range, with no guidance as to how an "arbitrary" interval of integers could be implemented. Accordingly, the term "arbitrary interval of integers" is indefinite. Richardson Decl. ¶ 49.

Plaintiff's proposed construction fails to lend any significant meaning to the term "arbitrary interval of integers." Plaintiff asserts that the term should be construed as "a range between two whole numbers." Opening Brief at p. 24. But this construction does nothing to cure the failure to set any limit on what the range can be. Again, a "range between two whole numbers" could be anything from one to infinity, as Dr. Menczel acknowledged. This renders the term indefinite. *See Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1371 (Fed. Cir. 2014) ("The claims, when read in light of the specification and the prosecution history, must provide objective boundaries for those of skill in the art."). Thus, the term "arbitrary interval of integers" has no meaning and should be ruled indefinite.

## I.    "Completely Independent and Separate" ('435 patent, claims 8, 9, 24, and 25)

| Defendants' Proposed Construction | Plaintiff's Proposed Construction |
|---|---|
| This term is indefinite under 35 U.S.C. § 112(2). | Not indefinite. <br><br> No construction necessary |

The term "completely independent and separate" appears in claims 8, 9, 24 and 25 of the '435 patent. Each claim is a dependent claim specifying that the "independent color hue control delta value" and "independent color saturation control delta value" are "completely independent

and separate." However, the specification provides no guidance as to what it means for these values – which are already specified as "independent" – to be "completely independent and separate." Richardson Decl. ¶ 50. Accordingly, it is unclear to a person of ordinary skill in the art what additional limitations these claims impose. *Id.* Thus, the term "completely independent and separate" is indefinite. *Id.*

Plaintiff asserts that the term "completely independent and separate" means "changing the *hue* of an individual color, for example, without changing the *saturation* of the *same* individual color (or the hue of other individual colors not selected to be changed)." Opening Brief at p. 26. But this requirement is already present in the claims from which claims 8, 9, 24 and 25 depend. In particular, the claims require

> selecting to ***independently*** change the hue ***or*** the saturation of an individual color in the real time digital video input image, by selecting an ***independent*** color hue control delta value or an ***independent*** color saturation control delta value[featured on said master control device, respectively] . . . .

'435 patent at claims 1 & 17 (emphasis added). Hue and saturation are already "separate" parameters and the base claims already require them to be "independent." Thus, the phrase "completely independent and separate" adds nothing to the claims, and is merely superfluous, indefinite language.

### J. "Viewer" ('435 patent, claim 17)

| Defendants' Proposed Construction | Plaintiff's Proposed Construction |
| --- | --- |
| a person | No construction necessary |

Defendants' proposed construction of "viewer" as "a person" is consistent with the '435 patent's disclosures and is seemingly undisputed by Plaintiff. Opening Brief at p. 27. In its brief, Plaintiff lays out an argument that only terms that are in dispute must be construed. *Id.* This confusingly suggests that Plaintiff simultaneously does not dispute and yet cannot agree to

Defendants' proposed construction. *Id.* If Plaintiff does not dispute Defendants' proposed construction, then the Court should adopt it as there is no issue present.

Furthermore, Defendants' proposed construction is clearly supported by the intrinsic evidence. Nearly every instance that the term "viewer" when discussed in depth in the '435 patent is in the context of "[a] user or viewer." at 26:23; 26:46-47; and 26:48. Furthermore, when discussing a "viewer," the '435 patent describes actual physical actions that only "a person" could perform. For example, the '435 patent defines a "viewer" as capable of:

> ***pushing or turning***, an independent color hue control mechanism, or, an independent color saturation control mechanism, such as ***a button, dial***, or graphic user interface (GUI) menu display, configured on a man-machine interaction (MMI) mechanism featured as part of a master control device, such as a built-in master color controller device, or, ***a wireless remote*** master color controller device, in operative electronic communication with the real time video image display device.

'435 patent at 26:29-37 (emphasis added). *See also* '435 patent at 26:48-52. Even Plaintiff's own expert, Dr. Menczel, agrees with Defendants' proposed construction.

> 22 Q But -- but if I was going to ask you to tell
> 1 me what the viewer is, what would you say?
> 2 A Somebody that views.
> 3 Q Did you say somebody that views?
> 4 A Uh-huh.
> 5 Q So a person that views, correct?
> 6 A Correct.

Menczel Deposition at 77:22-78:6. As disclosed by the specification of the '435 patent and confirmed by Plaintiff's own expert, the term "viewer" should be construed as "a person."[3]

## III. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court adopt Defendants' claim construction positions.

---

[3] Defendants reached out to Plaintiff on October 12, 2016, requesting a stipulation as to the proposed construction for "viewer." Defendants noted that Plaintiff's Opening Brief does not dispute Defendants' construction, Dr. Menczel similarly agrees with Defendants' construction, and bringing forth a term not in dispute by the parties would be a waste of resources. Plaintiff refused.

Dated: October 14, 2016

Respectfully submitted,

By:\_\_/s/ *Brian Craft*_____
Eric H. Findlay (TX Bar No. 00789886)
Brian Craft (TX Bar No. 04972020)
**FINDLAY CRAFT P.C.**
102 North College Avenue, Suite 900
Tyler, TX 75702
Tel: (903) 534-1100
Fax: (903) 534-1137
efindlay@findlaycraft.com
bcraft@findlaycraft.com

Michael C. Ting (admitted to E.D. Tex.)
California Bar No. 247610
Ken K. Fung (admitted to E.D. Tex.)
California Bar No. 283854
Fatima S. Alloo (admitted to E.D. Tex.)
California Bar No. 283694
**TECHKNOWLEDGE LAW GROUP LLP**
100 Marine Parkway, Suite 200
Redwood Shores, CA 94065
Tel: (650) 517-5200
Fax: (650) 226-3133
mting@tklg-llp.com
kfung@tklg-llp.com
falloo@tklg-llp.com

*Counsel for Defendants*
ACER INC. AND ACER AMERICA CORPORATION

By:\_\_/s/*David E. Sipiora*_____
Robert Christopher Bunt (TX Bar No. 00787165)
**PARKER, BUNT & AINSWORTH, P.C.**
100 E. Ferguson, Suite 1114
Tyler Texas 75702
Tel: (903) 531-3535
Fax: (903) 533-9687
rcbunt@pbatyler.com

David E. Sipiora (admitted to E.D. Tex.)
Colorado Bar No. 29759
Matthew C. Holohan (admitted to E.D. Tex.)
Colorado Bar No. 40996
**KILPATRICK TOWNSEND & STOCKTON LLP**
1400 Wewatta Street, Suite 600

Denver, CO, 80202
Tel: (303) 571-4000
Fax: (303) 571- 4321
dsipiora@kilpatricktownsend.com
mholohan@kilpatricktownsend.com

***Counsel for Defendant***
SHARP ELECTRONICS CORPORATION

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the 14th day of October 2016, I served a true and correct copy of the foregoing document on counsel of record in accordance with the Federal Rules of Civil Procedure via electronic mail.

*/s/ Brian Craft*
Brian Craft