Case 6:15-cv-00973-JRG-JDL  Document 66  Filed 12/15/16  Page 1 of 71 PageID #:  595

LONE STAR TECHNOLOGICAL INNOVATIONS, LLC vs SHARP ELECTRONICS CORPORATION, ET AL
CLAIM CONSTRUCTION HEARING,  on 11/10/2016

```
 1              IN THE UNITED STATES DISTRICT COURT

 2              FOR THE EASTERN DISTRICT OF TEXAS

 3                      TYLER DIVISION

 4   LONE STAR TECHNOLOGICAL      )(

 5   INNOVATIONS, LLC.            )(   CIVIL DOCKET NO.

 6                                )(   6:15-CV-00973-JRG-JDL

 7   vs.                          )(   TYLER, TEXAS

 8                                )(

 9   ACER, INC.                   )(

10   ET AL                        )(   NOVEMBER 10, 2016

11

12

13                  CLAIM CONSTRUCTION HEARING

14           BEFORE THE HONORABLE JUDGE JOHN D. LOVE

15                  UNITED STATES MAGISTRATE

16

17   APPEARANCES:

18   FOR THE PLAINTIFF:  (See sign-in sheets docketed in
                          minutes of this hearing.)
19

20   FOR THE DEFENDANT:  (See sign-in sheets docketed in
                          minutes of this hearing.)
21

22

23   COURT REPORTER:  Ms. Tammy L. Goolsby, CSR

24   Proceedings taken by Machine Stenotype; transcript was produced
     by a Computer
25
```

Case 6:15-cv-00973-JRG-JDL   Document 66   Filed 12/15/16   Page 2 of 71 PageID #:  596

LONE STAR TECHNOLOGICAL INNOVATIONS, LLC vs SHARP ELECTRONICS CORPORATION, ET AL
CLAIM CONSTRUCTION HEARING,   on 11/10/2016                                    2

1                          **I N D E X**

2

3    NOVEMBER 10, 2016

4                                               **PAGE**

5    Appearances                                    1

6    Hearing                                        3

7    Court Reporter's Certificate                  71

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Case 6:15-cv-00973-JRG-JDL  Document 66  Filed 12/15/16  Page 3 of 71 PageID #:  597

LONE STAR TECHNOLOGICAL INNOVATIONS, LLC vs SHARP ELECTRONICS CORPORATION, ET AL
CLAIM CONSTRUCTION HEARING,  on 11/10/2016                                          3

 1              COURT SECURITY OFFICER:  All rise.

 2              THE COURT:  Please be seated.  The clerk may call the

 3    case.

 4              COURT CLERK:  The clerk calls Case 6:15-cv-972, Lone

 5    Star Technological Innovations, LLC. versus Sharp Electronics

 6    Corporation.

 7              THE COURT:  Announcements?

 8              MR. SABA:  Good morning, Your Honor.  John Saba with

 9    Plaintiff Lone Star Technological Innovations, LLC., and with

10    me co-counsel John Lee and Mr. Brad Little, who is the general

11    counsel of Plaintiff.

12              THE COURT:  All right.  Thank you.

13              MR. BUNT:  Good morning, Your Honor.  Chris Bunt here

14    on behalf of Sharp Electronics Corporation.  Also with me today

15    is Mr. David Sipiora and Mr. Matthew Holohan from the

16    Kilpatrick, Townsend & Stockton Law Firm, and we're ready to

17    proceed.

18              MR. CRAFT:  Good morning, Your Honor.  Behind the

19    pole here, Brian Craft and Michael Ting on behalf of Acer

20    Defendants.

21              THE COURT:  Okay.  Let me first hear from -- we're

22    here for Claim Construction Hearing obviously.

23              Let me first just make mention of the fact that just

24    for my clarification of how we're going to proceed this

25    morning, as you know the Court issued an order last week

Case 6:15-cv-00973-JRG-JDL  Document 66  Filed 12/15/16  Page 4 of 71 PageID #:  598

LONE STAR TECHNOLOGICAL INNOVATIONS, LLC vs SHARP ELECTRONICS CORPORATION, ET AL
CLAIM CONSTRUCTION HEARING,  on 11/10/2016                                        4

 1   inviting the opportunity for more junior lawyers to present

 2   argument in this Claim Construction Hearing.  Let me ask if

 3   there's any junior lawyers from either side to be presenting,

 4   first from the Plaintiff?

 5          MR. SABA:  None from the Plaintiff's side, Your

 6   Honor.

 7          THE COURT:  Defense?

 8          MR. HOLOHAN:  None, Your Honor.

 9          THE COURT:  All right.  You have two hours for

10   argument then, so each side an hour, so do keep that in mind as

11   we proceed.

12          What -- as you may be aware, you received this

13   morning a chart that contains the Court's proposed preliminary

14   constructions in the last column, so we'll just begin with

15   argument on the first term.

16          My approach to Claim Construction Hearing procedure

17   is for the parties to present a chart that is prioritized by

18   the importance of the term to one or both sides.  I'm not sure

19   if that's what I have here, to be honest.  This is -- we're

20   proceeding under Judge Gilstrap's procedure, and I don't know

21   how he conducts his hearings.

22          So what I'm saying is that I'm assuming that we're

23   beginning with the most important term in this chart, Set of

24   individual color look-up tables.  If we are not, in your two

25   hours you have I want to get to the most important terms.

Case 6:15-cv-00973-JRG-JDL  Document 66  Filed 12/15/16  Page 5 of 71 PageID #:  599

LONE STAR TECHNOLOGICAL INNOVATIONS, LLC vs SHARP ELECTRONICS CORPORATION, ET AL
CLAIM CONSTRUCTION HEARING,  on 11/10/2016                                              5

1              I want those to go first, and if there's some less

2    important term that perhaps we don't get to or don't have a lot

3    of time for, it wouldn't be that important.  I don't want the

4    last terms to be saved -- or the most important terms to be

5    saved for last.

6              So let me ask about that.  I would say what I would

7    typically do is we begin with set of individual color look-up

8    tables as the most important term to one or both sides in the

9    chart, and we just begin argument on the Court's proposed

10   construction.

11             In other words, if you're happy with the Court's

12   proposed construction, I don't expect you to argue.  If you're

13   unhappy with it, you can argue, tell me why I'm wrong, and the

14   other side can respond.

15             Of course, if neither side is happy with it, then,

16   you know, y'all can just -- one side go and the other side go.

17   It doesn't matter to me.  We'll go back and forth on that term

18   until we've completed argument on it.

19             So to that end, let me first ask if there's a

20   different set of order of terms the parties would like to take

21   up in this chart.

22             MR. SABA:  Your Honor, can we have just a second to

23   confer?

24             THE COURT:  Sure.

25             MR. SABA:  Thank you.

1        THE COURT:  All right.  Ready to proceed?

2        MR. SABA:  Yes, Your Honor.  And to answer the

3   Court's question, we conferred with the Defendants, and I think

4   the priority would be individual look-up tables first and then

5   going to individual color.

6        This would be claim term five, then characterization

7   claim term six, the remaining disputed terms in the order after

8   that, if that so pleases the Court.

9        THE COURT:  That's fine.  So the first term to argue

10  would be set of individual color look-up tables, which is

11  number one in the chart.

12        MR. SABA:  That's correct, Your Honor, and I think it

13  would probably be appropriate for the Defendants to start --

14        THE COURT:  That's fine.

15        MR. SABA:  -- and we'll reserve for rebuttal.

16        THE COURT:  Yes, that's fine.  Counsel for the

17  Defendant?

18        MR. TING:  Good morning, Your Honor.

19        THE COURT:  Good morning.

20        MR. TING:  May it please the Court, my name is

21  Michael Ting on behalf of the Acer Defendants.

22        So if we go to slide three, so with respect to this

23  term, Your Honor, the Defendants would submit that the term a

24  set of individual color look-up tables is indefinite.  It

25  includes the indefinite term individual color.

Case 6:15-cv-00973-JRG-JDL  Document 66  Filed 12/15/16  Page 7 of 71 PageID #:  601

LONE STAR TECHNOLOGICAL INNOVATIONS, LLC vs SHARP ELECTRONICS CORPORATION, ET AL
CLAIM CONSTRUCTION HEARING,  on 11/10/2016                                        7

1          However, if the Court is inclined to find that

2    individual color is definite, Defendants submit that the proper

3    construction for this term would be a set of tables each

4    mapping an input individual color to an output individual

5    color.

6          And looking at slide five, the '012 patent provides a

7    clear definition of the look-up tables, which is contained at

8    column five, lines one through seven, reproduced here.

9          Not only is the Defendants' construction supported by

10   the intrinsic evidence.  It is also supported by the extrinsic

11   evidence.  Defendants' expert Dr. Richardson states in his

12   declaration at paragraph 21 that a person of ordinary skill in

13   the art would have understood that each look-up table or LUT

14   operates on a specific color.

15         A LUT would be set to receive a particular input

16   color and to output a particular output color.  In this sense,

17   the input color is mapped to the output color because each

18   output color produced by the look-up table is in response to a

19   particular input color.

20         And if we see also from the Electric Imaging

21   Technology, color mapping or pseudocoloring, color mapping maps

22   data to colors.  Most often the mapping is applied to scalar

23   data, but schemes exist to map multiple variables to different

24   components of color.

25         Plaintiff's expert Dr. Menczel during his deposition

Case 6:15-cv-00973-JRG-JDL   Document 66   Filed 12/15/16   Page 8 of 71 PageID #:  602

LONE STAR TECHNOLOGICAL INNOVATIONS, LLC vs SHARP ELECTRONICS CORPORATION, ET AL
CLAIM CONSTRUCTION HEARING,  on 11/10/2016                                          8

1  was asked, "Okay.  But the look-up tables are used to map an

2  input color to an output individual color, correct?"  And he

3  responds, "In a complex way."

4        Later in his deposition, Dr. Menczel attempts to

5  backtrack, but in doing so, we realize that he is at best

6  unclear as to what his understanding of mapping is in terms of

7  this claim term.

8        Plaintiffs also offer some confusing arguments

9  against the Defendants' proposed construction.  First, in their

10 opening claim construction brief, the Plaintiff's argue that

11 look-up tables are too simple for Defendants' construction, as

12 seen in the highlighted portion.  They also go on to argue that

13 look-up tables are too complex to use the word mapping.

14        And if we look at the right side bottom, quoting Dr.

15 Menczel's deposition, they state, "The four look-up tables

16 described above contain complex formulas which far exceed

17 simply 'mapping an input color to an output individual color.'"

18        Now, in his deposition Dr. Menczel admitted that his

19 understanding of the function and definition of the look-up

20 tables in the context of the '012 patent was incorrect.

21        First asked -- he was asked to confirm his statement

22 in his declaration that the four look-up tables that contain

23 complex formulas far exceed simply mapping an input color to an

24 output individual color, and he agreed.

25        Now, when asked to confirm again if it's his opinion

Case 6:15-cv-00973-JRG-JDL   Document 66   Filed 12/15/16   Page 9 of 71 PageID #:  603

LONE STAR TECHNOLOGICAL INNOVATIONS, LLC vs SHARP ELECTRONICS CORPORATION, ET AL
CLAIM CONSTRUCTION HEARING,   on 11/10/2016                                              9

1   that the complex formulas are part of the look-up table, he

2   said no for the first time and stated, in fact, that the

3   look-up tables are used as part of the formulas, not the other

4   way around.

5            Let's go to slide 11.  Plaintiffs also make the

6   argument that the Defendants' proposed construction is improper

7   because it relies on the only embodiment in the '012 patent.

8            Slide -- next slide.  Now, in the reply brief,

9   Plaintiffs rely on Innova/Pure Water, which states, "Even where

10  a patient describes only a single embodiment, claims will not

11  be read restrictively unless the patentee has demonstrated a

12  clear intention to limit the patent scope using words of

13  manifest exclusion or restriction."

14           This is what is happening in the '012 patent.  In the

15  '012 patent at column one, lines 59 through 65, which is not

16  being discussed in the context of the preferred embodiment, the

17  patentee writes, "The present invention features a unique

18  method of using simple Look-up Tables, whose values are

19  calculated from uniquely defined color control functions, to

20  digitally increase or decrease the saturation of a single color

21  of the chromatic part of a video image, e.g., CrCb, UV, or IQ,

22  without affecting saturations of the remaining colors of the

23  chromatic part of the same video image."

24           This is significant in that by characterizing the

25  present invention as a unique method of using simple look-up

Case 6:15-cv-00973-JRG-JDL   Document 66   Filed 12/15/16   Page 10 of 71 PageID #:  604

LONE STAR TECHNOLOGICAL INNOVATIONS, LLC vs SHARP ELECTRONICS CORPORATION, ET AL
CLAIM CONSTRUCTION HEARING,   on 11/10/2016                                            10

1    tables, what the patentee has done is they have provided a

2    clear intention to limit the claims scope to this only

3    embodiment presented in the patent.

4              Now, Plaintiffs have first taken the position that

5    the terms should be given its plain and ordinary meaning;

6    however, they offer no support for their position and offer

7    very little to no explanation.

8              Now, in terms of Plaintiff's alternative

9    construction, which is that a set of individual color look-up

10   tables is a set of individual color arrays or tables of value,

11   this construction should be rejected as the Plaintiffs have

12   offered no intrinsic support for this proposed construction,

13   and rather --

14             THE COURT:  Let me -- let me stop you there, so let's

15   go to the claim itself.

16             MR. TING:  Okay.

17             THE COURT:  So the term is a set of individual color

18   look-up tables.  That's what we're -- the Court's being asked

19   to construe here.

20             MR. TING:  Correct.

21             THE COURT:  And so where you find that saying claim

22   one of the '012 patent is in Step D; is that correct?

23             MR. TING:  Yes, Your Honor.  If you look at the

24   screen, the term a set of individual color look-up tables,

25   actually there's several times, and you're correct.  The first

Case 6:15-cv-00973-JRG-JDL   Document 66   Filed 12/15/16   Page 11 of 71 PageID #:  605

LONE STAR TECHNOLOGICAL INNOVATIONS, LLC vs SHARP ELECTRONICS CORPORATION, ET AL
CLAIM CONSTRUCTION HEARING,  on 11/10/2016                                              11

 1   time it appears is Step D.

 2           THE COURT:  Okay.  So what you're telling me is this

 3   should be defined as each mapping an individual -- individual

 4   color to an output of individual color.

 5           Now, first of all, how does that fit into this claim?

 6   We've got a term that's individual color look-up tables, and

 7   now you're having that table map an input color to an output

 8   color, so what does that do to the claim?  How does it work?

 9           MR. TING:  So it would work by, for example, in

10   Element D, for example, it would be defining a set of tables,

11   each mapping an input individual color to an output individual

12   color.

13           THE COURT:  According to an individual color?

14           MR. TING:  That is correct, Your Honor.

15           Now, the reason that, you know, the individual color

16   appears, you know, twice and may cause you some hesitancy, Your

17   Honor, is because each of the look-up tables is created based

18   on a specific color.  Every color is given its own look-up

19   table.

20           THE COURT:  Well, I don't see mapping anywhere in the

21   claim, so -- so now you've got it mapping.  You've got it

22   designing.  You've got it inserting.  You've got it

23   determining.  You've got it displaying, and you're going to

24   have it mapping here.

25           I just don't see mapping anywhere in here, and I'm

Case 6:15-cv-00973-JRG-JDL  Document 66  Filed 12/15/16  Page 12 of 71 PageID #: 606

LONE STAR TECHNOLOGICAL INNOVATIONS, LLC vs SHARP ELECTRONICS CORPORATION, ET AL
CLAIM CONSTRUCTION HEARING,  on 11/10/2016                                                12

1  just interested as to why that needs to be inserted into the

2  claim.

3          MR. TING:  Sure, Your Honor.  If we can go back to

4  slide five, so the definition provided in column five, lines

5  one through seven, states that the look-up tables are defined

6  such that each of the output image chromatic components, Cr'

7  and Cb', is related to the both input image chromatic

8  components, Cr and Cb, and correspondingly each of the output

9  chromatic pixel values Cr' at coordinates i,j and Cb' at

10  coordinates i,j is related to both input image chromatic pixels

11  values $Cr(i,j)$ and $Cb(i,j)$.

12          So what's happening with these look-up tables, Your

13  Honor, is that they oversee the specific input, and that input

14  will be chromatic components Cr and Cb, and those will be

15  mapped to output chromatic components.

16          The input Cr and Cb are the chromatic components of a

17  color, Your Honor, and thus the input information is data,

18  which is a color.  The output is a change is a different color.

19  It's whatever has been adjusted creates a -- say, for example,

20  if you're adjusting orange, Your Honor, you might adjust the

21  saturation of orange up or down and receive a new color.

22  For -- the key here is for any given input, there will be one

23  specific output.

24          Now, if we go to the next slide -- my apologies if I

25  rushed through this the first time, Your Honor -- the

Case 6:15-cv-00973-JRG-JDL  Document 66  Filed 12/15/16  Page 13 of 71 PageID #:  607

LONE STAR TECHNOLOGICAL INNOVATIONS, LLC vs SHARP ELECTRONICS CORPORATION, ET AL
CLAIM CONSTRUCTION HEARING,  on 11/10/2016                              13

1  relationship of -- the relation between the input image

2  chromatic components and the output image chromatic components

3  is known to those of ordinary skill in the art as color

4  mapping.

5          It is showing the relationship between a given input

6  and the corresponding output, and this is why we have -- this

7  is why the Defendants' construction use the word mapping.

8          Thank you, Your Honor.

9          THE COURT:  All right.  Thank you.

10          MR. SABA:  Good morning, Your Honor.  Just a few

11  points.

12          THE COURT:  Okay.  Go ahead.

13          MR. SABA:  Your Honor, just a few points on the plain

14  and ordinary meaning.  I understand that the Court's proposed

15  construction, this will take just -- I wanted to highlight just

16  a few things.

17          First, the '012 patent specification at column one,

18  lines 59 to 65 that I believe Mr. Ting had referenced, this

19  specifies the present invention features a unique method of

20  using simple look-up tables whose values are calculated from

21  uniquely defined color control functions.

22          Simple in this regard is operative in that while a

23  simple look-up table, that being a table or array of values is

24  used in the process of color control, you know, the unique

25  methods around how colors change specifically color control

Case 6:15-cv-00973-JRG-JDL   Document 66   Filed 12/15/16   Page 14 of 71 PageID #:  608

LONE STAR TECHNOLOGICAL INNOVATIONS, LLC vs SHARP ELECTRONICS CORPORATION, ET AL
CLAIM CONSTRUCTION HEARING,  on 11/10/2016                                            14

1    functions can vary.

2            So we agree with the Court's proposed construction

3    that simple look-up tables, you know, would be the definition

4    that one of skill in the art would assume.  It's used no

5    differently throughout the claims, and that is a table of -- a

6    table or an array of values.

7            In our opening brief, our expert Dr. Menczel had

8    explained that a person of skill in the art would understand

9    look-up table in this manner and also provided extrinsic

10   evidence that the IEEE dictionary that is consistent with the

11   term that the -- with the preliminary construction the Court

12   has proposed.

13           But more importantly Defendants' expert Dr. Iain

14   Richardson describes a LUT, as we say in the art, as -- as --

15   in part of his introductory declaration, he described it as, In

16   computer processing, a look-up table is an array to which

17   values are input and indexed for retrieval, and so this is --

18           THE COURT:  Let me just -- before we get into the

19   expert here, what the Defendant put up or showed to me was a

20   quote from the specification when I asked where's mapping fit

21   into this, because this is what this comes down to in this

22   particular term, right, mapping?  The Defendant believes that

23   these tables are mapping.

24           And I know we have a dispute about individual color,

25   but they want it map and input color and output color, and you

Case 6:15-cv-00973-JRG-JDL   Document 66   Filed 12/15/16   Page 15 of 71 PageID #:  609

LONE STAR TECHNOLOGICAL INNOVATIONS, LLC vs SHARP ELECTRONICS CORPORATION, ET AL
CLAIM CONSTRUCTION HEARING,   on 11/10/2016                          15

 1  believe that's incorrect?

 2          MR. SABA:  Yes, Your Honor.  Let me -- let me cut to

 3  the chase.

 4          THE COURT:  Again, the specification cite is, again,

 5  when I asked where's the mapping, he pointed me to that, and

 6  he's saying that's what they defined it, this LUT, as being

 7  mapped.  Now they have -- I believe they have an expert which

 8  supports that.  Respond to the specification cite first.

 9          MR. SABA:  Yes, Your Honor.  Thank you.  The

10  specification citation -- I don't have a slide on this -- is

11  that column five -- the '012 patent, column five, lines one

12  through seven.

13          And it describes that LUTs are defined such that each

14  of the output chromatic components Cr and Cb is related to both

15  the input chromatic components Cr and Cb, and to this, the

16  Defendants make the leap that that somehow means mapping.

17          Well, first, this is a preferred embodiment, and it's

18  described accordingly in the specification, and so to -- to

19  import this description into the proposed construction of

20  look-up table would be improper.

21          But second -- and I think Your Honor had alluded to

22  this earlier.  John, can you put up claim -- or page 18 for me?

23  The claims themselves instruct how the look-up table is used,

24  and it's described as the preamble method of selectively

25  controlling an individual color, the steps of receiving,

Case 6:15-cv-00973-JRG-JDL  Document 66  Filed 12/15/16  Page 16 of 71 PageID #: 610

LONE STAR TECHNOLOGICAL INNOVATIONS, LLC vs SHARP ELECTRONICS CORPORATION, ET AL
CLAIM CONSTRUCTION HEARING,  on 11/10/2016                                                    16

1  characterizing, selecting the individual color, and then

2  defining a set of individual color look-up tables, which we've

3  discussed briefly.

4           And then values are assigned -- pardon me.  And then

5  Step G, the claims teach that the look-up tables are -- are --

6  their values are inserted into -- excuse me -- inserting

7  initial values into said look-up tables and then determining

8  new values of said set of individual color look-up tables.

9           So the claims themselves -- claim one -- and claim

10 one is explicit in what is to be populated in the individual

11 look-up table, and it is our position that that is not mapping.

12          And so -- and in the Plaintiff's -- in the briefing

13 before the Court, in the expert declaration of Defendants -- in

14 Defendants -- well, Defendants' expert declaration, the

15 Defendants cite the previous passage in the specification that

16 talks about relating components and then makes the leap without

17 support to mapping.

18          So our position, I guess, Your Honor, is mapping is

19 not supported by the specifications, and it certainly is not

20 supported by the claims because the claims teach it explicitly.

21          THE COURT:  Okay.  So just draw for me the

22 distinction between in your mind from what they're talking

23 about and mapping and what -- what's going on here.

24          MR. SABA:  This is -- this is hard to articulate, but

25 what I believe the -- the specification reference is talking

Case 6:15-cv-00973-JRG-JDL  Document 66  Filed 12/15/16  Page 17 of 71 PageID #:  611

LONE STAR TECHNOLOGICAL INNOVATIONS, LLC vs SHARP ELECTRONICS CORPORATION, ET AL
CLAIM CONSTRUCTION HEARING,  on 11/10/2016                                    17

1    about, as cited earlier, the relating to, is it takes color

2    components from one individual color as -- as it's related to

3    an input -- let me get my -- that the values are stored in the

4    look-up tables are operated on by the color control functions

5    in an effort to -- well, in an effort to -- that the look-up

6    tables contain values that are rendered or of a function of the

7    color control functions in changing chromatic components in

8    this specific embodiment of the -- of the patented invention.

9           But it's not a mapping of -- of necessarily X to Y.

10   It's -- it's -- it is controlling the color and populating the

11   look-up tables with those values.

12          I don't think I did a very good job of articulating

13   that, but I -- I can come back to the Court on this later.

14          THE COURT:  Well, I guess what you're saying is that,

15   first of all, you're saying what they're talking about in

16   column five is preferred embodiment.

17          MR. SABA:  Correct.

18          THE COURT:  Now, I guess are you telling me that,

19   yes, in the technical sense what's being discussed here is what

20   is known in the art as mapping, but what's claimed is not so

21   narrow that it's -- it's characterized here as assigning and

22   there are other, you know, mechanisms, other ways in which

23   these values can be matched up or input and output.

24          Is that -- is that -- am I correct in saying that is

25   what's known in the art as mapping?

Case 6:15-cv-00973-JRG-JDL   Document 66   Filed 12/15/16   Page 18 of 71 PageID #:  612

LONE STAR TECHNOLOGICAL INNOVATIONS, LLC vs SHARP ELECTRONICS CORPORATION, ET AL
CLAIM CONSTRUCTION HEARING,  on 11/10/2016                              18

 1          MR. SABA:  I would not say that it is known --

 2   that -- I'll -- but useful look-up tables known in the art as

 3   mapping in this regards, Your Honor, for the plain reason that

 4   as a practical matter a look-up table can contain a color

 5   reference value, and that, in itself, is not a map to anything.

 6   It's just a reference and how a look-up table is used.

 7          So in the art, look-up tables are used in programming

 8   and display technology so that the processor doesn't have to

 9   perform one additional step.  It's just -- it's a reference

10   table, but to say that it's only mapping would be to narrow the

11   claim when the claim itself is explicit.

12          As you said, that -- it teaches you how the look-up

13   table is used, just assigned values.  Whether or not it maps or

14   not is not -- is not how -- how it would be used as plain and

15   ordinary meaning.

16          THE COURT:  Okay.  All right.  Anything else on this?

17          MR. SABA:  No, thank you, Your Honor.

18          THE COURT:  All right.  Defendant, anything else on

19   this?

20          MR. TING:  If I can have a brief --

21          THE COURT:  Just briefly.  I guess, you know,

22   Mr. Ting, it comes down to I'm not necessarily disagreeing in

23   the sense perhaps that what's discussed in part, at least,

24   maybe is known in the art mapping, but are you proposing

25   something here that's simply too narrow preferred embodiment?

Case 6:15-cv-00973-JRG-JDL   Document 66   Filed 12/15/16   Page 19 of 71 PageID #: 613

LONE STAR TECHNOLOGICAL INNOVATIONS, LLC vs SHARP ELECTRONICS CORPORATION, ET AL
CLAIM CONSTRUCTION HEARING,   on 11/10/2016                                          19

 1          You're taking something discussed in the contents of

 2    the part of embodiment and importing that into the claim which

 3    doesn't talk about it and is more broadly set forth.

 4          MR. TING:  So I'll address that point, Your Honor.

 5          First, you know, as the initial matter, we do not

 6    believe we're actually importing a limitation from the

 7    preferred embodiment.  It happens that the definition that's

 8    given for look-up table in the patent occurs during discussion

 9    of the only embodiment.

10          Now, the point we were making with respect to the

11    patentee choosing to ever close everything else was in response

12    to their argument that we were, in fact, trying to carry out --

13    carry in a limitation from the preferred embodiment into the

14    claim.

15          Now, even if we were importing a limitation from the

16    preferred embodiment, we would -- we submit that it would be

17    allowed based on the statements made in the patent

18    specification by the patentee.

19          Now, part of the criticism I heard about our

20    construction from counsel was that we are taking it too narrow

21    and we are in a sense over-narrowing the term.  That is not

22    what we're doing, Your Honor.

23          A look-up table under our construction still would

24    contain values.  It's just our construction reflects the

25    function of the look-up tables as used in the unique method

Case 6:15-cv-00973-JRG-JDL   Document 66   Filed 12/15/16   Page 20 of 71 PageID #:  614

LONE STAR TECHNOLOGICAL INNOVATIONS, LLC vs SHARP ELECTRONICS CORPORATION, ET AL
CLAIM CONSTRUCTION HEARING,  on 11/10/2016                                        20

1    disclosed in the '012 patent, which is to help convert and

2    change an input color into an output color.

3         And that is what we consider mapping, Your Honor,

4    because these look-up tables, if you put in a specific set of

5    chromatic components in, you will get a specific output, which

6    is a color, and that's the concept that we're trying to capture

7    here, and we do not believe that this is duplicative at all of

8    what is stated in claim one.

9         For example, Your Honor, as they pointed out in G,

10   there is inserting initial values into the said individual

11   color look-up tables, there's determining new values in said

12   set of individual color look-up tables.

13        But what is not being captured here and what the

14   patents defined is that it's the initial color look-up table

15   that receives an input of color components and outputs as a

16   result a new color in terms of a change in saturation.

17        THE COURT:  Okay.  Let me ask -- this will probably

18   be the last point and move on, but, you know, in looking at the

19   claim, and particularly looking at -- going back to figure one

20   in the '012 patent, there is step three, which talks about

21   defining the fine sets of color look-up tables; and then

22   there's step eight, calculating and assigning values to the

23   output video image featuring the new chromatic components.

24        So -- and that goes somewhat to what I'm talking

25   about in the claim here.  Step eight is calculate and assign,

Case 6:15-cv-00973-JRG-JDL   Document 66   Filed 12/15/16   Page 21 of 71 PageID #: 615

LONE STAR TECHNOLOGICAL INNOVATIONS, LLC vs SHARP ELECTRONICS CORPORATION, ET AL
CLAIM CONSTRUCTION HEARING,  on 11/10/2016                                          21

 1  and so are we, you know, inserting into -- this goes along with

 2  what I asked earlier -- into the concept of the look-up tables

 3  this mapping functionality that is really called out in, for

 4  example, step eight and other steps of the claim itself?

 5          MR. TING:  No, it's not, Your Honor.  It's -- what's

 6  happening here in step eight is -- step eight would be the

 7  output, Your Honor, and that is based on, you know, the values

 8  that are put into the look-up table and it's what's going to

 9  come out of the look-up table.

10          But the core idea here is that the look-up table

11  itself is receiving input chromatic components and mapping

12  those to a set of output color components.

13          THE COURT:  Okay.  Anything else?

14          MR. TING:  No.

15          THE COURT:  All right.  Let's move on to the next

16  term, which is individual color control functions.

17          MR. HOLOHAN:  Good morning, Your Honor.  Matthew

18  Holohan for Defendant Sharp Electronics Corporation.

19          So, Your Honor, regarding individual color, to

20  understand the context for this discussion, I think it's useful

21  to draw a distinction between a color and a color component.

22  It's a distinction that's very well known in the art and sort

23  of lost, unfortunately, in the specifications of the '012 and

24  the '435 patents.

25          So if you look at slide 59 from the Defendants' claim

Case 6:15-cv-00973-JRG-JDL  Document 66  Filed 12/15/16  Page 22 of 71 PageID #:  616

LONE STAR TECHNOLOGICAL INNOVATIONS, LLC vs SHARP ELECTRONICS CORPORATION, ET AL
CLAIM CONSTRUCTION HEARING,  on 11/10/2016                                    22

1    construction presentation, you can see that there is an

2    illustration of a color and how colors are formed from color

3    components.

4            On the left-hand side, there's this picture of a barn

5    against the mountain and you can see there's all different

6    colors.  There's various shades of blue in the sky, there's

7    gray in the mountains, there's various shades of brown in the

8    barn and green in the grass.

9            And then if you look at the right-hand side, you can

10   see that every one of those individual colors in the final

11   picture is actually a combination of specific values of red,

12   green, and blue, so you choose your values of red, green, and

13   blue, and you combine them to make the ultimate individual

14   color that you want to express.

15           So in the specific --

16           THE COURT:  So we are on individual colors; correct?

17           MR. HOLOHAN:  Yes, Your Honor.

18           THE COURT:  Okay.  Go ahead.

19           MR. HOLOHAN:  If we go back to slide 56, as we

20   mentioned in our brief, the two patents contain nearly

21   identical lexicographic definitions of individual color

22   involved, saying the individual color is a lineal combination

23   of the base colors, and the base colors can be red, green,

24   blue, or complimentary colors yellow, cyan, and magenta.

25           Now, in the Plaintiff's brief, they seem to suggest

Case 6:15-cv-00973-JRG-JDL   Document 66   Filed 12/15/16   Page 23 of 71 PageID #:  617

LONE STAR TECHNOLOGICAL INNOVATIONS, LLC vs SHARP ELECTRONICS CORPORATION, ET AL
CLAIM CONSTRUCTION HEARING,   on 11/10/2016                                                    23

1    that those base colors themselves are the individual color,

2    which is problematic right out of the gate because you can see

3    that that leads to a circular definition.  If you -- the

4    individual color red is like linear combination of red, green,

5    blue, and yellow, cyan, magenta.  It's just red.

6           So from that point reading the specification and

7    trying to make sense of what the patentee ostensibly invented,

8    it's completely unclear to a person of ordinary skill in the

9    art what the invention is trying to accomplish here.

10          And I think that becomes quite clear in the testimony

11   of Plaintiff's expert Dr. Menczel, if you go to slide 62.  The

12   specifications of both patents extol the virtues of changing a

13   single color and not changing the other colors.

14          And Dr. Menczel in his deposition said, well, red and

15   orange can be the same color.  I can change red and also change

16   orange if you define red to include orange.  Well, that

17   completely vitiates the purpose of the -- of the invention.

18          If you go to the next slide, Dr. Menczel said the

19   '012 and the '435 patents do not give the way how to divide the

20   colors, where is the line.  The patents provide no guidance as

21   to where you draw the line in the broad spectrum of possible

22   colors to define what your individual color is.

23          To define the range in which I'm only changing colors

24   within this band, I'm not changing any other, quote, unquote,

25   individual colors.  And without that guidance, you can simply

Case 6:15-cv-00973-JRG-JDL Document 66 Filed 12/15/16 Page 24 of 71 PageID #: 618

LONE STAR TECHNOLOGICAL INNOVATIONS, LLC vs SHARP ELECTRONICS CORPORATION, ET AL
CLAIM CONSTRUCTION HEARING, on 11/10/2016                                    24

1   define individual color to be the full spectrum of colors.  You

2   may can change the video display, you change every single

3   color, and that somehow meets the claims.

4            So a person of ordinary skill in the art looking into

5   the claims of these patents would not know the metes and

6   bounds, would not know the conduct that is within the claims

7   and the conduct that is outside the claims.

8            And in regards to the specific -- to the Court's

9   preliminary construction, the Plaintiffs had proposed as their

10  primary proposed construction a range of values of particular

11  color and explained -- we explained in our brief and I

12  explained just now why an individual color can't have a range.

13  Individual color components have ranges, and you choose values

14  within those ranges to construct your individual color.

15           The Plaintiff's alternative definition, which has

16  been preliminary adopted by the Court, is linear combinations

17  of color components.  Well, that's problematic as well because

18  if we go back to slide 56 again, the specific definition of the

19  patent is not linear combinations, it's a linear combination.

20           And that's why the Defendants provided the word

21  specific in their construction to make clear that based on the

22  very clear language in the specification linear color is a

23  combination -- I'm sorry -- an individual color is a linear

24  combination of base colors.

25           THE COURT:  Well, let me ask about that.  At column

1   12, line 57 in the '012 patent, it does seem to refer to linear

2   combinations.

3           MR. HOLOHAN:  So, Your Honor, those are expressed as

4   linear.  Okay.  So if we go back to slide 59, the passage you

5   just referred to is referring to the RGB space and the Y --

6   called YCrCb space.

7           Dr. Richardson in his declaration explains how those

8   two spaces operate, and I'm reading from paragraph seven of his

9   declaration.  He says as he explained in his textbook that he

10  wrote, each chromatic component CrCb is a difference between a

11  base color red or blue and aluminates or a weighted average of

12  the three base colors red, green, and blue.

13          So that passage in column 12 is referring to the --

14  and, again, this is where it's sort of -- these are the

15  chromatic parts Cr and Cb of the individual color components

16  red, green, blue, yellow, magenta, and cyan.

17          So the -- the color component red, if you look at the

18  complete universe of the color red in video display, that

19  covers a range of values.  There are different shades of red,

20  and those values can be expressed as combinations of the CrCb

21  chromatic components.

22          But if we take that -- if we go from chromatic

23  component to color component to individual color, by the time

24  you get to individual color, you only have one combination.

25  There's only one combination that you're dealing with, and

Case 6:15-cv-00973-JRG-JDL   Document 66   Filed 12/15/16   Page 26 of 71 PageID #:  620

LONE STAR TECHNOLOGICAL INNOVATIONS, LLC vs SHARP ELECTRONICS CORPORATION, ET AL
CLAIM CONSTRUCTION HEARING,  on 11/10/2016                                    26

 1   that's clear from the plain definition in the patent.

 2          So were the Court inclined to find this claim

 3   definite, we think that the Defendants' proposed construction

 4   is more accurate because it actually captures what the

 5   specification says what is that individual color is a single

 6   combination of those RGB color components.

 7          THE COURT:  Well, let me ask about that, the

 8   definiteness part of this.

 9          What you seem to be saying is that you just -- for

10   lack of a better way of putting it, just sort of disagree with

11   the idea that you can define individual colors this way, that

12   is these linear combinations.

13          I don't think it's that you don't understand it.  You

14   just disagree with it from a technical standpoint, that they're

15   just -- just sort of wrong.

16          MR. HOLOHAN:  Well, Your Honor, --

17          THE COURT:  And I'm concerned about that being not a

18   definiteness issue, but perhaps some other defensive issue,

19   enablement comes to mind, and so respond to that issue.

20          MR. HOLOHAN:  Your Honor, it's not that we disagree

21   that an individual color can be defined as a linear combination

22   of base colors, as I think that's -- that's one possible

23   construction.

24          The problem is that starting from that definition in

25   the specification, a person of ordinary skill in the art is

Case 6:15-cv-00973-JRG-JDL   Document 66   Filed 12/15/16   Page 27 of 71 PageID #: 621

LONE STAR TECHNOLOGICAL INNOVATIONS, LLC vs SHARP ELECTRONICS CORPORATION, ET AL
CLAIM CONSTRUCTION HEARING,  on 11/10/2016                                          27

 1   unable to understand what the invention is and fundamentally,

 2   and particularly in light of Dr. Menczel's testimony where he

 3   said the individual color can be anything, it can be red and

 4   orange together.  Presumably it can be red, yellow, and orange

 5   together.

 6             If you look at the function of the patent claim as a

 7   delineation of a property right, a person of ordinary skill in

 8   the art needs to know what -- what they're going to do to be

 9   inside the claim and outside the claim.

10             And without guidance as to how an individual color is

11   defined and how an individual color as coherently defined can

12   be manipulated in a coherent way, a person of ordinary skill in

13   the art is left ignorant and uninformed as to how to practice

14   the claim, how to avoid the claim, and I believe that is an

15   indefiniteness issue.

16             THE COURT:  Okay.  So you kind of addressed what I

17   said about -- I asked you about column ten and its reference to

18   linear combination -- column 12, excuse me, and its reference

19   to individual or linear combinations.

20             So I guess -- I know you propose a linear

21   combination, so, say, column one, line 31 through 34,

22   hereinafter an individual color represents a linear combination

23   of these -- of the base colors, whereby the base colors feature

24   red, green, blue, yellow, cyan, and magenta.

25             So respond to me how that -- I guess what you're

Case 6:15-cv-00973-JRG-JDL   Document 66   Filed 12/15/16   Page 28 of 71 PageID #:  622

LONE STAR TECHNOLOGICAL INNOVATIONS, LLC vs SHARP ELECTRONICS CORPORATION, ET AL
CLAIM CONSTRUCTION HEARING,  on 11/10/2016                    28

 1   saying is it's not so much -- would you concede that they

 2   appear to be defining the term?

 3              MR. HOLOHAN:  As I said in our briefs, Your Honor,

 4   the patentee attempted to define the term, yes.

 5              THE COURT:  So with that in mind, I guess I

 6   understand you're disputing combinations as opposed to

 7   combination.  You're saying that with that definition, the

 8   invention -- the bounds of the invention are not sufficiently

 9   clear.

10              MR. HOLOHAN:  Yes, Your Honor.

11              THE COURT:  Well, let me ask -- well, hit on that

12   point again.  Tell me why with that definition the claims --

13   these claims are indefinite.

14              MR. HOLOHAN:  Well, Your Honor, perhaps the -- I

15   guess we have multiple indefiniteness arguments, and perhaps

16   one of them is more related to that issue.

17              As we explained and as the Plaintiff said in their

18   brief, you cannot -- if you adjust red, you're adjusting all

19   shades of red, and there doesn't seem to be a way in the

20   specification to adjust a specific linear combination of colors

21   without adjusting everything else.

22              The second argument I think is based on -- is

23   illustrated by Dr. Menczel's testimony that you can define red

24   to include orange, and it doesn't make sense for a linear

25   combination of base colors -- the same linear combination of

Case 6:15-cv-00973-JRG-JDL   Document 66   Filed 12/15/16   Page 29 of 71 PageID #:  623

LONE STAR TECHNOLOGICAL INNOVATIONS, LLC vs SHARP ELECTRONICS CORPORATION, ET AL
CLAIM CONSTRUCTION HEARING,  on 11/10/2016                                    29

 1   base colors to be both red and orange.  It's one or the other.

 2          THE COURT:  Well, let me ask about that, and this

 3   goes more to, I guess, just how the accused products, what they

 4   are, how they work, how they're -- what specifications they're

 5   designed to, how they ship out the door to consumers.

 6          What is the -- what are the specifications on that?

 7   Is there a standard by which these products are developed?

 8   What are we talking about here?

 9          MR. HOLOHAN:  Well, Your Honor, unfortunately the

10   specific components at least with respect to Sharp Electronics

11   Corporation, I can't speak to Acers' products, the specific

12   components that actually perform a color management are

13   provided by third party chip suppliers -- actually fourth party

14   technically because Sharp Corporation, which actually does most

15   of the development and designs prior to this case, they're the

16   ones that contract with these other chip suppliers, and we

17   identified those chip suppliers in interrogatory responses.

18          The actual source code specifications and so on are

19   in the possession of third parties, and they're not in our

20   custody or control.  We're not aware of any industry standard

21   specification that requires any particular way of manipulating

22   color.  Certainly Plaintiff has not pointed to any such

23   standards.  This is not a standards case.

24          But the Plaintiffs have identified an exemplary

25   implementation in one of the Acer product on pages 13 and 14 of

1   the brief where there's a screenshot of some sort of user menu

2   on an Acer product, and the options are to adjust red saturate,

3   green saturate, blue saturate, yellow saturate, magenta

4   saturate, or cyan saturate, so adjustment saturation of any of

5   those six base colors that you combine together to get your

6   individual color.

7           And as described by Plaintiff -- and, again, it's

8   not -- it's not an SEC product, so I can't speak to it.  It

9   says one desires to change the saturation of the individual

10  color red, and he referred to red here as an individual color,

11  and we disagree that one would select the individual color red,

12  single color and/or one color, and increase the saturation from

13  50 percent, 53 percent.

14          And then there's the image, and they say the result

15  of increasing the saturation of all shades of red, light red to

16  dark red, without affecting the other, quote, unquote,

17  individual colors, shades of green, magenta.

18          So based on what the Plaintiff is saying here and

19  based on what the Plaintiff has said in their infringement

20  contentions, our understanding of the infringement theory in

21  this case is that simply adjusting any of those six base

22  colors, according to Plaintiff, would meet these claims,

23  notwithstanding the fact that you -- you -- you're necessarily

24  adjusting a color component as opposed to a combination of

25  color components and you're also adjusting a full range of

Case 6:15-cv-00973-JRG-JDL   Document 66   Filed 12/15/16   Page 31 of 71 PageID #:  625

LONE STAR TECHNOLOGICAL INNOVATIONS, LLC vs SHARP ELECTRONICS CORPORATION, ET AL
CLAIM CONSTRUCTION HEARING,  on 11/10/2016                                          31

 1    colors when you do that.

 2            THE COURT:  Well, respond to the concept of ranges.

 3    Is that something -- you know, you talked about, well, you

 4    know, the expert says in your characterization of it, I guess,

 5    red can be orange and orange can be red, you know.  When you

 6    say it that way, it sounds, you know, like, well, that can't

 7    be.

 8            But when we're talking about ranges and, you know,

 9    when you've got a visual spectrum, you know, expressed in

10    wavelengths and, you know, there's different shades of red and

11    it bleeds into, you know, and there's maybe a range that is

12    what's really being talked about here, respond to that idea.

13            MR. HOLOHAN:  Yes, Your Honor.  Can we go to slide

14    60, please?

15            Your Honor, as near as I can tell from what Dr.

16    Menczel said in his deposition, I think this graphic

17    illustrates the two different kind of ranges that we can talk

18    about when we're talking about colors.

19            On the left side is the saturation of color, the base

20    color red, and I think this is what Lone Star was referring to

21    in their brief.  You can adjust the saturation all the way down

22    to the bottom where it turns black, all the way to the top

23    where it's bright red and anywhere in between.

24            On the right-hand side of this page is the hue

25    values, and I think what Dr. Menczel was saying is that if you

Case 6:15-cv-00973-JRG-JDL  Document 66  Filed 12/15/16  Page 32 of 71 PageID #:  626

LONE STAR TECHNOLOGICAL INNOVATIONS, LLC vs SHARP ELECTRONICS CORPORATION, ET AL
CLAIM CONSTRUCTION HEARING,  on 11/10/2016                                    32

1  have a range of values built around red, and that color wheel

2  on the far right side, I think you can see the sort of cardinal

3  colors, there's pure red, pure green, pure blue, and then they

4  kind of fade into other as you go around the wheel.

5          If you start up at cardinal red at the top, you know,

6  you can define a range that is nothing but, you know, what the

7  human eye would consider red.  You can go beyond that and pick

8  up some orange and purple.  But based on Dr. Menczel's

9  testimony that the patents don't tell you where to draw the

10  line, you can keep going and pick up yellow, more purple and

11  just keep going.

12          I mean, if -- if the definition is just a range of

13  values, well, the entire wheel is a range of values, and that's

14  what's problematic about Plaintiff's conception of this term.

15          THE COURT:  Okay.  Anything else?

16          MR. HOLOHAN:  I think that covers it for us, Your

17  Honor.

18          THE COURT:  Okay.  All right.  Response?

19          And I guess I want to address a couple of points

20  here.  One would be this idea that I just addressed that, of

21  course, that being this range idea and that being essentially

22  indefinite as not sufficiently communicating what an individual

23  color is or means.  What's your response to that?

24          MR. SABA:  Your Honor, I -- if I could, I think you

25  had asked with regard to that question how the patented

Case 6:15-cv-00973-JRG-JDL   Document 66   Filed 12/15/16   Page 33 of 71 PageID #: 627

LONE STAR TECHNOLOGICAL INNOVATIONS, LLC vs SHARP ELECTRONICS CORPORATION, ET AL
CLAIM CONSTRUCTION HEARING,  on 11/10/2016                                    33

 1  technology is implemented, and I actually have a slide on that.

 2  I think that might be helpful if it pleases the Court.

 3          THE COURT:  Sure, that's fine.

 4          MR. SABA:  Let me give you a background slide.  John,

 5  slide 28.  Thank you.

 6          The specification references here that I think you

 7  had mentioned earlier, just by way of background, in the '012

 8  describes a linear combination of particular chromatic

 9  components for any number of different colors that can be

10  included in the method, red, green, blue, yellow, magenta, and

11  cyan.

12          And the -- the issue with the way that -- excuse

13  me -- the design choice on how that's implemented is you can

14  have color control on three colors, for instance, red, green,

15  and blue, or you can have color control on six colors, but the

16  claims are broad enough to encompass both.

17          Then you discussed '012 patent, column 12, which

18  talks about the chromatic dynamic range of the colors, which

19  indicates that individual color would be a range and --

20          THE COURT:  Now, he says individual color components

21  is the problem there.  Color components have ranges.  Colors do

22  not.

23          MR. SABA:  Right.  I believe that the Court has

24  proposed in the preliminary construction a linear combinations

25  of color components, and that means that, for instance, in an

Case 6:15-cv-00973-JRG-JDL   Document 66   Filed 12/15/16   Page 34 of 71 PageID #:  628

LONE STAR TECHNOLOGICAL INNOVATIONS, LLC vs SHARP ELECTRONICS CORPORATION, ET AL
CLAIM CONSTRUCTION HEARING,  on 11/10/2016                                                34

1    RGB color format, a linear combination, the color component

2    would be red, green, or blue and any combinations there could

3    get you another color, so that a linear combination of color

4    components would include a range.

5           And let me get to the -- let me get to the example

6    that I think would be helpful, if you can turn to page 30,

7    John.  In the '435 specification at column ten, lines 24 to 32,

8    the specification describes there's an identifying each input

9    pixel having red, R, as the individual color whose hue or

10   saturation was selected to be independently changed.

11          And then directly beneath that there's an equation

12   that's offered as a preferred embodiment where it is here red,

13   so, for instance, for the individual color red, if an input

14   image pixel value contains the individual color red, the way

15   that this would be evaluated to determine whether or not that

16   pixel contains the individual color is if there is enough red

17   or red is greater than green and red is greater than blue.

18   It's not an equal to.  It's a greater than.

19          So a pixel is identified in the following manner, if

20   you can go to the next slide.  For instance, as a preferred --

21   by implementing the preferred embodiment, if the individual

22   color red is selected to be changed, which would include a

23   range of values of red, up on the right you see, you know, a

24   generic typical controller to change the hue.

25          Logically the individual color would be identified in

Case 6:15-cv-00973-JRG-JDL   Document 66   Filed 12/15/16   Page 35 of 71 PageID #:  629

LONE STAR TECHNOLOGICAL INNOVATIONS, LLC vs SHARP ELECTRONICS CORPORATION, ET AL
CLAIM CONSTRUCTION HEARING,   on 11/10/2016                                                                      35

1   the color wheel as the range red on the left, so the pie slice

2   out of the color wheel, that would be red, which would include

3   in this instance, just by example, maybe some dark orange, but

4   not all orange, but it's a design choice on how to implement,

5   you know, the range of red so that there's -- so it's not

6   applied in the exact manner.

7          Then once the individual color red is identified as

8   being changed, the -- the equation we saw in the preceding

9   slide goes through each of the input pixel values on the lower

10  left and determines whether or not the amount of red is --

11  meets a threshold, and, if so, it's identified as being

12  changed, but only those values that have enough of the red

13  component to be included in the individual color red category

14  and then are outputted on the bottom right-hand corner.

15         So in this instance the way that the -- if you could

16  turn to page 29, John.  Our expert explained that the examples

17  in the specification that individual colors can include red,

18  green, blue, yellow -- sorry I'm going so fast -- yellow, cyan,

19  and magenta, is related to what's called the color cube and

20  color theory.

21         And it's -- the color cube and color theory is

22  understood it's a three-axis system where a certain number of

23  combinations of colors can be comprised, depending on what

24  color format you may be using in the -- in your device.

25         But the point here is that an individual color is not

Case 6:15-cv-00973-JRG-JDL   Document 66   Filed 12/15/16   Page 36 of 71 PageID #:  630

LONE STAR TECHNOLOGICAL INNOVATIONS, LLC vs SHARP ELECTRONICS CORPORATION, ET AL
CLAIM CONSTRUCTION HEARING,  on 11/10/2016                                         36

1   one specific point on the cube, but rather a corner, so, for

2   instance, blue is not the corner tip of the upper left-hand

3   corner tip of the cube.  It's -- it can be a slice as if you

4   were to take a knife and cut off the corner and you would be

5   left with a pyramid.  That would be the individual color.  It

6   would range from dark blue to light blue as it's --

7           You know, I guess an analogy would be looking -- if

8   you're looking at the rainbow.  You would look at the clue and

9   there's no one individual color, but it's a spectrum of color

10  and a spectrum of light.

11          And so that's why we believe that the Court's

12  preliminary construction is consistent with the specification

13  and the claim language taken as a whole, and I think that's all

14  I'm going to say, Your Honor, unless you have any questions.

15          THE COURT:  And so when I raised the issue of

16  combinations, the Defendant says, well, no, it's a -- at best

17  it's a specific linear combination, and they say, well, that's

18  how, you know, it's -- they -- column one, for example, a

19  linear combination of the base colors.

20          So is your response to that what you just told me,

21  that is, there's a slice, there's a range, for example, blue;

22  therefore, these combinations of color components is

23  appropriate.

24          MR. SABA:  I believe that would be the case, Your

25  Honor.  I think that it would be easier for a jury to

Case 6:15-cv-00973-JRG-JDL   Document 66   Filed 12/15/16   Page 37 of 71 PageID #:  631

LONE STAR TECHNOLOGICAL INNOVATIONS, LLC vs SHARP ELECTRONICS CORPORATION, ET AL
CLAIM CONSTRUCTION HEARING,  on 11/10/2016                                          37

 1   understand if it was combinations because there should be no

 2   implication that it's one specific color fire engine red versus

 3   red.  The individual -- which, you know, would range from light

 4   red to dark red.

 5          THE COURT:  So in your mind they're saying again

 6   these, for lack of a better word putting it boundaries between

 7   individual colors are unclear, you know, I guess how blue is

 8   blue and how -- you know, they don't have anything to hang

 9   their hat on specifically as being blue or red, and so in your

10   mind that's not a hindrance or a barrier to understanding what

11   is claimed here.

12          MR. SABA:  Yes, Your Honor, and let me answer that

13   question by giving you an example.  In traditional video

14   displays, my understanding -- and I'm not a technical expert,

15   but my understanding is that a color format is typically

16   characterized in the eight bit depth color space, so for red it

17   would be eight bits, green it would be eight bits, and blue

18   would be eight bits, and that combination can give you, for

19   instance, 16 million colors, which is described to as the color

20   gamut.

21          But if you use a higher bit depth like you're seeing

22   on some, you know, super high graphic monitors, for instance,

23   you may have a ten bit depth, and that combination would give

24   you I think like 1.2 billion combinations.  So in an eight bit

25   world where you have, you know, a smaller color gamut, the

1    individual colors range would actually be smaller because the

2    device is not capable of expressing as many colors.

3            So blue, the individual color blue would have --

4    what's the word I'm looking for?  Would have less -- would have

5    a smaller range than if you were to express an individual color

6    on an eight or ten bit where you have up to 1.2 billion colors,

7    but blue is blue.

8            THE COURT:  All right.  Thank you.

9            MR. SABA:  Thank you.

10           THE COURT:  Anything else?

11           MR. HOLOHAN:  Just very briefly, Your Honor.

12           THE COURT:  Go ahead.

13           MR. HOLOHAN:  Just in terms of a few of the comments

14   that were made, so the specifications cite from the '436

15   specification where it seems to refer to red an individual

16   color being identified in a range, you know, of the red values

17   within this range do something about it.

18           There are a few instances in the specification

19   where -- and this is just something I mentioned at the outset

20   of my remarks earlier.  The specification tends to disregard

21   and confuse the difference between an individual -- between

22   color and color component.  That was one of the examples.

23           And in terms of the ranges being known based on

24   implementation, if their position -- excuse me.  If their

25   position is that the individual color blue is just all possible

Case 6:15-cv-00973-JRG-JDL   Document 66   Filed 12/15/16   Page 39 of 71 PageID #:  633

LONE STAR TECHNOLOGICAL INNOVATIONS, LLC vs SHARP ELECTRONICS CORPORATION, ET AL
CLAIM CONSTRUCTION HEARING,  on 11/10/2016                                           39

 1  values of blue from no blue at all to maximum blue, that isn't

 2  part of that, that isn't an argument before the Court, and it's

 3  completely inconsistent with Dr. Menczel's testimony, which

 4  says there is no guidance.  You can define blue however you

 5  want to.

 6            And pointing to hypothetical implementations, these

 7  eight bit and ten bit implementations, they're not in the

 8  specification, does not assist one of ordinary skill in the art

 9  when the entire purpose of the invention is to control the

10  individual colors and the patent does not explain what an

11  individual color is.

12            THE COURT:  All right.  Thank you.

13            MR. HOLOHAN:  Thank you, Your Honor.

14            THE COURT:  Okay.  What will be the next term?

15            MR. SABA:  I believe it's characterizing, Your Honor.

16            THE COURT:  All right.  I'm going to take about a

17  five-minute break and then we'll resume here with

18  characterizing.

19            COURT SECURITY OFFICER:  All rise.

20            (Recess taken.)

21            COURT SECURITY OFFICER:  All rise.

22            THE COURT:  Please be seated.  All right.  We'll

23  begin with characterizing.

24            MR. HOLOHAN:  Thank you, Your Honor.  I'm going to be

25  brief with this term.

Case 6:15-cv-00973-JRG-JDL  Document 66  Filed 12/15/16  Page 40 of 71 PageID #:  634

LONE STAR TECHNOLOGICAL INNOVATIONS, LLC vs SHARP ELECTRONICS CORPORATION, ET AL
CLAIM CONSTRUCTION HEARING,  on 11/10/2016                          40

1          Defendants' position is that this term is indefinite

2    as the specification fails to explain what it means by

3    characterizing.  We have outlined in our brief what the

4    specification of both patents does have to say.

5          The '012 patent has various substeps.  It's not

6    really clear how those relate to what characterizing means.

7    The '435 patent has just a very brief description of it.

8    Again, not really explaining what it means.

9          Plaintiffs have come back with numerous arguments

10   applying various synonyms to characterizing, out of which

11   neither provide clarity to the term in terms of the extrinsic

12   evidence.

13         So, Your Honor, our position is that, first of all,

14   the term characterizing, as Dr. Richardson said, has no

15   ordinary meaning in the art.  The Plaintiff has found some

16   extrinsic references that use characterizing in particular

17   ways, and in the specification, as I just said is explained in

18   our briefs, you know, fail to add any clarity to that term, so

19   that's our position.

20         THE COURT:  Response?

21         MR. SABA:  Nothing further, Your Honor, on this

22   point.

23         THE COURT:  All right.  Let's move on to the next

24   term.

25         MR. SABA:  Thank you, Your Honor.  The next term is

Case 6:15-cv-00973-JRG-JDL   Document 66   Filed 12/15/16   Page 41 of 71 PageID #:  635

LONE STAR TECHNOLOGICAL INNOVATIONS, LLC vs SHARP ELECTRONICS CORPORATION, ET AL
CLAIM CONSTRUCTION HEARING,  on 11/10/2016                                           41

1    individual color control functions.

2            THE COURT:  All right.

3            MR. SABA:  All right.  Your Honor, if we could, I

4    want to take up, to begin with, the claim language itself.

5            This individual color control functions is contained

6    in claim 1E of the '012 patent, defining a set of individual

7    color control functions according to an individual color for

8    calculating values in said set of individual LUTs.

9            Then the '012 specification, while referring to a

10   preferred embodiment, goes on to say there is a definition of

11   color control functions to be used for calculating values in

12   each set of individual LUTs.  Sets of individual color control

13   functions are subsequently used for digitized selective control

14   of individual colors.

15           That is the -- that is the definition that the -- or

16   the construction that the Plaintiff has proposed, and in the

17   preliminary -- in the Defendants' proposed construction and the

18   Court's preliminary construction, there contains added language

19   that functions that each operate on linear combinations of

20   values of the input image chromatic components for an

21   individual color.

22           And it is -- it is Plaintiff's position that the

23   support for that is from a preferred embodiment and would be --

24   it would be improper to include that, the last half of this

25   definition, because it would be importing the description from

Case 6:15-cv-00973-JRG-JDL   Document 66   Filed 12/15/16   Page 42 of 71 PageID #:  636

LONE STAR TECHNOLOGICAL INNOVATIONS, LLC vs SHARP ELECTRONICS CORPORATION, ET AL
CLAIM CONSTRUCTION HEARING,   on 11/10/2016                                          42

1    the preferred embodiment in the claim itself to narrow it.

2            And this is highlighted by -- if you could go to the

3    next slide, John.  Thank you -- by dependent three of the '012.

4    Dependent three of the '012 recites whereby the method of claim

5    one, whereby each individual LUTs of set of individual color

6    look-up tables is a function of values of pixels of chromatic

7    components of the digital video input image, said chromatic

8    components of the digital video input image having chromatic

9    dynamic range.

10            And so the -- the Defendants' proposed construction

11    of this is already claimed in independent three, which our

12    position is dependent three would capture the preferred

13    embodiment.

14            The reference to functions of values in claim one as

15    recited by claim three is, I guess, the way -- the way to

16    understand it in light of the specifications that you have

17    look-up tables that can store values, but you have the color

18    control functions which can contain a number of different

19    algorithms, methods, that calculate values to be placed in the

20    individual color look-up tables, and dependent three is talking

21    about a specific format of those values.

22            And so our position -- Plaintiff's position would be

23    that including language that it necessarily be input image

24    chromatic components for an individual color would narrow claim

25    one and put it at odds with claim three.

1        THE COURT:  Well, you may have touched on this, but

2   specifically I -- what I'm looking at here is column 1, 59

3   through 65.

4        The present invention features a unique method of

5   using simple look-up tables, et cetera, and its referring --

6   we're talking about color control functions.  It talks about

7   the chromatic part of a video image.  And so this, at least at

8   this point, was my conclusion that this term should be defined

9   at least in part or is including chromatic components.

10       So your response -- and, again, the -- it's not a

11  preferred embodiment.  It's a present invention, and that's my

12  concern, that that term has been defined in such a way as

13  including chromatic components, so respond to that.

14       MR. SABA:  Yes, Your Honor.  I'm trying to find the

15  citation in the specification that talks about the color

16  format, if you can give me just one second and let me --

17       Your Honor, if I could direct the Court's attention

18  to column three, lines 50, it's the first paragraph under

19  description of preferred embodiments where the specification

20  says the present invention is a method of selective color

21  control of digital video images.

22       For purposes of illustration, the following

23  description of preferred embodiments to the present invention

24  focuses on the CrCb format of the chromatic part of the digital

25  video image, but that the method of the present invention is

Case 6:15-cv-00973-JRG-JDL   Document 66   Filed 12/15/16   Page 44 of 71 PageID #:  638

LONE STAR TECHNOLOGICAL INNOVATIONS, LLC vs SHARP ELECTRONICS CORPORATION, ET AL
CLAIM CONSTRUCTION HEARING,   on 11/10/2016                                                    44

1    applicable to other formats.

2            And so it is our position that -- it is our position

3    that this is -- the reference is regarding the YCrCb format as

4    specified by the -- or described by the preferred embodiment in

5    the patent and that it would be improper to limit claim one to

6    exclusively teach to that format and no others.

7            THE COURT:  Okay.  And it says the method of the

8    present invention is applicable to other formats such as UV

9    and -- or IQ of a digital video image.

10           So you're saying there's a -- this chromatic concept

11   or idea is part of the YCrCb color space, not necessarily other

12   color spaces that this invention can be applicable to?

13           MR. SABA:  That's correct, Your Honor.

14           THE COURT:  All right.  Response?

15           MR. TING:  So, Your Honor, I'd like to begin by

16   directly addressing Plaintiff's argument that somehow our

17   construction is limited to the YCrCb color space.

18           If we look at slide 19, we can see they make this

19   argument in their opening claim construction brief that we are

20   somehow seeking to improperly to import the remaining portion

21   of the above description, which is in reference to a preferred

22   embodiment.  In the second box, Defendants reference to this

23   description in the specification relates to a preferred

24   embodiment limited only to the YCrCb color format.

25           Now, this is incorrect for several reasons, Your

Case 6:15-cv-00973-JRG-JDL   Document 66   Filed 12/15/16   Page 45 of 71 PageID #:  639

LONE STAR TECHNOLOGICAL INNOVATIONS, LLC vs SHARP ELECTRONICS CORPORATION, ET AL
CLAIM CONSTRUCTION HEARING,  on 11/10/2016                                    45

 1   Honor, and I believe that Your Honor has pointed out already

 2   it's not -- it's in the patent specification, but more

 3   importantly -- and also, Your Honor, if we go to slide 16, just

 4   so I can put our proposed construction, the Court's proposed

 5   construction up, the construction uses the term chromatic

 6   components, not Cr, not Cb.  It's chromatic components, and

 7   chromatic components are not limited to the YCrCb about color

 8   space.

 9            Now, for example, if we could go to slide 21,

10   Plaintiff's expert agrees with the Defendants.  He confirmed at

11   his deposition that the term chromatic components is used in

12   various color spaces.

13            For example, he's asked, Are you familiar with YUV,

14   the YUV color space?  Yes.

15            And you understand that chromatic components are used

16   to refer to the UV portion of YUV; correct?  Correct.

17            One thing I noticed on this, my apologies, Your

18   Honor.  I believe that should be YUV.  There is I guess a court

19   reporter error on this one.

20            And asked again, And are you also familiar with the

21   YIQ color space?  He says, I do.

22            And the term chromatic components refers to the IQ

23   portion of YIQ; is that correct?  And he responds, Correct.

24            And if we turn to slide 20, Yosef Segman is the

25   inventor of both the '012 patent and the '435 patent.  In the

Case 6:15-cv-00973-JRG-JDL   Document 66   Filed 12/15/16   Page 46 of 71 PageID #: 640

LONE STAR TECHNOLOGICAL INNOVATIONS, LLC vs SHARP ELECTRONICS CORPORATION, ET AL
CLAIM CONSTRUCTION HEARING,   on 11/10/2016                                    46

1    '435 patent, Mr. Segman states, In still another format, real

2    time digital video images feature colors or color components

3    characterized by linear combinations of the chromatic parts, Cr

4    and Cb, also known in the art as U and V, respectively, in

5    YCrCb or YUV respectively.

6             So what we have here, Your Honor, is we have two

7    different people, Dr. Menczel and Mr. Yosef Segman, who are

8    more than persons of ordinary skill in the art, and they

9    understand that chromatic components are not limited to the

10   YCrCb color space.  Thank you, Your Honor.

11            THE COURT:  And so it says in column 15, 9 through

12   63, it says increase or decrease the saturation of a single

13   color the chromatic part of the video image, e.g. CrCb, UV, or

14   IQ.

15            MR. TING:  Uh-huh.

16            THE COURT:  So that indicates to you that the

17   chromatic part applies to different color formats?

18            MR. TING:  Absolutely, Your Honor.

19            THE COURT:  So let me ask this:  What do you think

20   the dispute here is?  And I can ask the Plaintiff this, but

21   what's the -- why does the dispute here?

22            And I -- you know, I know you have your individual

23   color argument related to indefiniteness, but taking that out

24   of it, what -- what's the heart of the dispute?

25            MR. TING:  The heart of the dispute, Your Honor, is

Case 6:15-cv-00973-JRG-JDL   Document 66   Filed 12/15/16   Page 47 of 71 PageID #:  641

LONE STAR TECHNOLOGICAL INNOVATIONS, LLC vs SHARP ELECTRONICS CORPORATION, ET AL
CLAIM CONSTRUCTION HEARING,  on 11/10/2016                                    47

 1   to make sure that -- if I can do a bit of a background, Your

 2   Honor, and this is the case where I believe my colleague for

 3   Sharp has already pointed out that no one yet has the source

 4   code to actually know what's going on here.

 5           And so, you know, as always in every case, but

 6   especially when we don't really know what the exact

 7   infringement theory is yet because they've relied on the -- you

 8   know, for certain source code limitations and the infringement

 9   contentions, you're allowed to in a way to delay, put of

10   providing those until you can inspect the source code.  At this

11   point no source code has even been requested or subpoenaed.

12           But the importance here is very important for us to

13   make sure that we construe these claims as accurately as

14   possible to make sure that once the source code is reviewed,

15   there's no room for error and there's no -- to minimize the

16   amount of disputes later on as to whether an actual limitation

17   has been met.

18           And if we look at -- slide 18, please.  So we look

19   at, you know, column six, 29 through 32 of the '012 patent

20   where we see the genesis of both the Court's proposed and

21   Defendants' proposed constructions, Plaintiffs have chose to

22   focus only on the phrase used for digitized selective control

23   of individual colors.

24           However, that doesn't tell us what the individual

25   color control functions are or any details about them.  All

Case 6:15-cv-00973-JRG-JDL   Document 66   Filed 12/15/16   Page 48 of 71 PageID #:  642

LONE STAR TECHNOLOGICAL INNOVATIONS, LLC vs SHARP ELECTRONICS CORPORATION, ET AL
CLAIM CONSTRUCTION HEARING,   on 11/10/2016                                    48

1   it's saying is that subsequently -- they're subsequently used

2   for digitized selective control of individual colors, but

3   that's the overall theme of the patent.  It's not telling me

4   anything that's going to be helpful to a jury to understand or

5   to accurately reflect what individual color control functions

6   are.

7           What will help is what comes after, which is

8   operating on linear combinations of values of the input image

9   chromatic components, because this is actually telling me what

10  the individual color control functions are going to do, and

11  that in order for a function to meet this limitation or for a

12  line of code, an equation to meet this specific limitation, it

13  has to operate on linear combinations of values of the input

14  image chromatic components.  It cannot simply be something that

15  is at sometime used for digitized selective control of

16  individual colors.

17          THE COURT:  All right.  Thank you.  All right.  Let

18  me just briefly touch on this term and then move on to the next

19  one.  I guess for the Plaintiff I -- go ahead and let Mr. Saba

20  come up.

21          Okay.  So the issue with regard -- first of all,

22  there's a term, the definition is chromatic part of the video

23  image, e.g. CrCb, UV, or IQ, so why not define this?  If the

24  concern is UV or IQ, why define this with the chromatic

25  components terminology, and then, furthermore, what is the

Case 6:15-cv-00973-JRG-JDL  Document 66  Filed 12/15/16  Page 49 of 71 PageID #:  643

LONE STAR TECHNOLOGICAL INNOVATIONS, LLC vs SHARP ELECTRONICS CORPORATION, ET AL
CLAIM CONSTRUCTION HEARING,  on 11/10/2016                                            49

 1  issue here with regard to this term?

 2          MR. SABA:  Yes, Your Honor.  I believe the issue is

 3  that the patents do not specifically -- they're not

 4  specifically limited to a specific color format in the '012,

 5  and that by the inclusion of chromatic components, it would be

 6  narrowing the claim itself to apply it to a specific format.

 7          And we raised the issue of dependent three -- I think

 8  it was dependent three -- being in conflict with that narrowing

 9  because it would be our position it would be a violation of the

10  claim differentiation, and so the issue is whether or not the

11  claims are specific to a format.

12          THE COURT:  Okay.

13          MR. SABA:  Thank you.

14          THE COURT:  All right.  Let's move to -- I think the

15  next term is color control parameters.

16          MR. TING:  Your Honor, Defendants propose that color

17  control parameters should be construed as the change of the

18  output image chromatic component from the input chromatic

19  component for a specific color.

20          Go to slide 29.  We're just highlighting where the

21  term color control parameters appear in claim one, and it is in

22  sub element F.

23          In looking at slide 30, the Defendants' construction

24  is guided and defined by the specification of the '012 patents

25  specifically at column eight, lines 25 through 35.

Case 6:15-cv-00973-JRG-JDL   Document 66   Filed 12/15/16   Page 50 of 71 PageID #:  644

LONE STAR TECHNOLOGICAL INNOVATIONS, LLC vs SHARP ELECTRONICS CORPORATION, ET AL
CLAIM CONSTRUCTION HEARING,  on 11/10/2016                              50

1              Now, in discussing the control parameter -- the color

2     control parameters, it states clearly that the color control

3     parameters are for relating the output image chromatic

4     component to input image chromatic components, and the

5     example --

6              THE COURT:  I guess let me stop you there because

7     we --

8              MR. TING:  Yes.

9              THE COURT:  The concern I have in looking at this

10    was, am I correct in saying that there is another parameter

11    that's specifically, you know, called out or identified, and

12    that being integer break point color control parameter?  You're

13    talking about tangent color control parameter here?

14             MR. TING:  Right.

15             THE COURT:  From what I can tell, there's an integer

16    break point color control parameter that's involved here as

17    well.  Is that not correct?

18             MR. TING:  That is correct, Your Honor.

19             THE COURT:  And so are we -- is your proposal

20    limiting the parameter to a tangent control or tangent color

21    control as opposed -- and not -- and excluding integer break

22    point?

23             MR. TING:  No, Your Honor.

24             THE COURT:  And why is that?

25             MR. TING:  I mean -- I meant we're not excluding

 1 | that.
 2 |         THE COURT:  Well, I think the way I was reading it
 3 | was, and the point you're putting up here, maybe you're getting
 4 | to it later, but -- so you're saying your proposal includes
 5 | both; is that correct?
 6 |         MR. TING:  What I'm saying, Your Honor, is -- let me
 7 | be a little more clear.
 8 |         Our proposal is for the term color control
 9 | parameters, and we've used the specifications teaching, and
10 | it's specifically talking in this situation about the tangent
11 | control parameters, but we are not limiting it to just the
12 | tangent color control parameters.  Our construction is relevant
13 | to all color control parameters, whether it be the tangent or
14 | the integer control.
15 |         THE COURT:  Okay.  Okay.  Why is it necessary?
16 |         You know, another concern I have is, you know,
17 | parameter is, I think, a word that's understandable.  Why is it
18 | necessary to define it?
19 |         MR. TING:  It's necessary to define it, Your Honor,
20 | because the color control parameter serves a specific function
21 | here, and that's reflected in our construction, which is that
22 | the color control parameters are what actually reflect, you
23 | know, the change from one color to another.  The parameters are
24 | going to be used in a color control functions to actually
25 | determine what the actual output will be.

Case 6:15-cv-00973-JRG-JDL  Document 66  Filed 12/15/16  Page 52 of 71 PageID #:  646

LONE STAR TECHNOLOGICAL INNOVATIONS, LLC vs SHARP ELECTRONICS CORPORATION, ET AL
CLAIM CONSTRUCTION HEARING,  on 11/10/2016                                              52

 1          So from, you know, column 8, 25 through 35, what we

 2  see is you're going to relate the output image chromatic

 3  component, Cr', to the inputs, and also you're going to relate

 4  the output image chromatic components, Cb', to be input

 5  chromatic components.

 6          Now, I understand that there might be some confusion

 7  as to how we get from the relating to our construction of

 8  change, but what these parameters are going to establish is the

 9  relationship between the inputs and the outputs, and the inputs

10  and the outputs, the big difference between them is the change,

11  and that is what is going to be represented by these

12  parameters.

13          THE COURT:  Okay.  Anything else?

14          MR. TING:  No, Your Honor.

15          THE COURT:  All right.  Well, in response in that,

16  what the Defendant is highlighting for me is the fact -- that

17  what they're pointing out is these parameters deal with the

18  change of the output from the input.

19          And if that's the case -- and maybe you disagree with

20  that, but if that's the case, then should the Court define the

21  term to specify for the jury what we're talking about here in

22  the parameter is the change between the two, output and input?

23          MR. SABA:  May I respond to that, Your Honor?

24          THE COURT:  Yes.

25          MR. SABA:  Okay.  Your Honor, I want to start with --

Case 6:15-cv-00973-JRG-JDL   Document 66   Filed 12/15/16   Page 53 of 71 PageID #:  647

LONE STAR TECHNOLOGICAL INNOVATIONS, LLC vs SHARP ELECTRONICS CORPORATION, ET AL
CLAIM CONSTRUCTION HEARING,  on 11/10/2016                                      53

 1   look at -- quickly at claim one of the '012 patent with regard

 2   to the color control parameter term.

 3           We talked about this earlier this morning, and that

 4   is that claim one recites a series of steps to selectively

 5   control an individual color; receiving, Step A; characterizing,

 6   Step B; C, selecting the individual color.

 7           But then you get down to D, defining individual color

 8   look-up tables according to a color; and then Step E says --

 9   specifies, defining a set of individual color control functions

10   according to an individual color calculating values in said set

11   of individual color look-up tables.

12           Step F, assigning values to color control parameters

13   in said set of individual color control functions, and then G

14   inserting those values to look-up table.

15           And so where I think there might be a

16   misunderstanding that the parameter is not the value.  I think

17   the Defendants might be suggesting the parameter is a variable

18   to use to control the function that derives values to go into

19   the look-up table.

20           And you have -- if you'll go to the next slide.

21   Thank you.  In this specification you have cited, well, isn't

22   tangent the parameter?  We believe that is the case.  The

23   parameter in this instance is TangentCr_ColorCr and

24   TangentCrColor_Cb, which are contained within the control

25   function which produces a value to be placed into the look-up

Case 6:15-cv-00973-JRG-JDL   Document 66   Filed 12/15/16   Page 54 of 71 PageID #:  648

LONE STAR TECHNOLOGICAL INNOVATIONS, LLC vs SHARP ELECTRONICS CORPORATION, ET AL
CLAIM CONSTRUCTION HEARING,  on 11/10/2016                                      54

 1  table.

 2          So whereas a parameter takes plain and ordinary

 3  meaning, that being a variable that is assigned a value -- what

 4  do we say?  A variable that is -- variables that are given

 5  value for color control function.  It's not the actual change

 6  value itself.

 7          THE COURT:  All right.

 8          MR. SABA:  Thank you.

 9          THE COURT:  Anything else on this?

10          MR. TING:  No, Your Honor.

11          THE COURT:  All right.  Let's move to -- I think the

12  next term is whereby all other colors of digital video input

13  image remain unchanged.

14          I think the dispute here has to do with colors or

15  pixels, so --

16          MR. HOLOHAN:  Your Honor, if the Court -- for the

17  Court's convenience, I've actually sort of combined this term

18  with what's listed as term seven on the Court's preliminary

19  claim construction, the without affecting the hue or saturation

20  of other individual color because I think the parties agree

21  that the dispute over both of these terms is essentially the

22  same whether we want to talk about colors or pixels as well as

23  colors.

24          And if we -- if we can turn to slide 46, starting

25  with the claim language, the claim is clear that starting with

Case 6:15-cv-00973-JRG-JDL  Document 66  Filed 12/15/16  Page 55 of 71 PageID #:  649

LONE STAR TECHNOLOGICAL INNOVATIONS, LLC vs SHARP ELECTRONICS CORPORATION, ET AL
CLAIM CONSTRUCTION HEARING,  on 11/10/2016                                          55

1  the '012 patent, claim one, the claim is quite clear that you

2  are manipulating pixels in order to change colors.  You input

3  pixels.  You take pixels out.  You display them.

4          And the set of slides here, the next slide, please,

5  the '435 patent is similar.  The word pixels appears several

6  times in the claim.  Next slide, please.  And that just

7  illustrates that.

8          And to explain why that would be helpful to the jury

9  to specify that we are dealing with pixels and not just colors

10  in the abstract, we can look at slide 44, and this, Your Honor,

11  is a -- this is just a graphic from our tutorial demonstrating

12  how colors are actually presented and created in a digital

13  display.

14          If you look, this image here is a very, very deep

15  zoom into the very small portion of video display, and if you

16  were to zoom out, you would see a normal human eye with various

17  colors.

18          But when you get in really close, you can see what

19  you're looking at is pixels that have various values of red,

20  green, blue, which was, I think, discussed earlier, but are

21  combined to make colors.

22          And there's really no dispute -- I don't think

23  there's a serious dispute, if you look at slide 49, that the

24  patent and any conceivable implementation of the patent uses

25  pixels to manifest the invention.

Case 6:15-cv-00973-JRG-JDL   Document 66   Filed 12/15/16   Page 56 of 71 PageID #:  650

LONE STAR TECHNOLOGICAL INNOVATIONS, LLC vs SHARP ELECTRONICS CORPORATION, ET AL
CLAIM CONSTRUCTION HEARING,  on 11/10/2016                                          56

 1          Plaintiff's expert Dr. Menczel acknowledged that the

 2   implementation shown in the -- in the specification of these

 3   patents has to do with pixels, and when asked if there were any

 4   other implementations that would change colors without changing

 5   pixels, he just said there may be, there may not be.  He

 6   couldn't come up with any when asked.

 7          So, Your Honor, we think that the jury --

 8   particularly as sort of dense as these claims are, I think the

 9   jury would be assisted in conceiving of these two terms as

10   specifically operating on pixels in order to change colors, and

11   that's why we proposed the construction we have.

12          THE COURT:  Now, how does this make any difference, I

13   guess is my question?

14          I mean, first of all, the term is color.  Color and

15   pixels are different; right?  I mean, they're different terms.

16          MR. HOLOHAN:  Color and pixels mean two different

17   things.

18          THE COURT:  And so why -- why does it matter?  Again,

19   the term is color.  Why not -- why change that?  Why is it

20   necessary to do that?

21          MR. HOLOHAN:  Your Honor, as Mr. Ting mentioned, in

22   part because we don't have the source code, we don't really

23   know what we're aiming at.

24          We want to be as precise as possible with the claims,

25   and we want the jury to be able to understand when we talk

Case 6:15-cv-00973-JRG-JDL  Document 66  Filed 12/15/16  Page 57 of 71 PageID #:  651

LONE STAR TECHNOLOGICAL INNOVATIONS, LLC vs SHARP ELECTRONICS CORPORATION, ET AL
CLAIM CONSTRUCTION HEARING,  on 11/10/2016                                    57

1    about manipulating colors in addition to whatever else that may

2    be going on behind the scenes in the look-up tables and the

3    values, if they are, in fact, in the code, that we are

4    beginning and ending with pixels, and those pixels are actually

5    changing to manifest these changes in color, so it's really

6    just an issue of being precise and being accurate and assisting

7    the jury.

8             THE COURT:  All right.  Thank you.  Anything from the

9    Plaintiff on this?

10            MR. SABA:  No, Your Honor.

11            THE COURT:  All right.  Let's move to -- I think the

12   next term is arbitrary interval of integers.

13            MR. HOLOHAN:  Slide 73, please.  Your Honor, on this

14   term, as explained in our briefing, we believe this term is

15   indefinite for the Defendants.

16            When I asked Dr. Menczel what is the limit on the

17   range of integers given this term, he said it's arbitrary,

18   couldn't come up with any explanation beyond what the patent

19   itself -- what the claim term itself says.  Arbitrary sort of

20   by definition is inherently vague and unhelpful term.

21            If you look at the next slide, the specification '435

22   patent draws a distinction between a sort of principle

23   hypothetical implementation using an arbitrary range of

24   integers, and then it says for implementation we do it this

25   other way.

Case 6:15-cv-00973-JRG-JDL   Document 66   Filed 12/15/16   Page 58 of 71 PageID #: 652

LONE STAR TECHNOLOGICAL INNOVATIONS, LLC vs SHARP ELECTRONICS CORPORATION, ET AL
CLAIM CONSTRUCTION HEARING,   on 11/10/2016                                    58

1          So there's no teaching in the specification.  I think

2    the specification explicitly says that the use of an arbitrary

3    range is only -- is sort of in principle conceptualization of

4    the invention and the implementation you would need to define

5    in some other way, which the claim fails to do.

6          THE COURT:  Okay.  Anything else?

7          MR. HOLOHAN:  No, Your Honor.

8          THE COURT:  All right.  Response?

9          MR. SABA:  Nothing on this point, Your Honor.

10          THE COURT:   All right.  Let's move to the next term

11    then, completely independent and separate.

12          MR. SABA:  Thank you, Your Honor.  Preliminarily the

13    Court has indicated that it believes the term is indefinite.  I

14    just want to walk through a couple of things in the

15    specification.

16          Actually beginning with the claim itself on

17    completely independent and separate, the Plaintiff's position

18    is that the term is not indefinite, and beginning with the

19    comparison of claim one, which teaches selecting to

20    independently change the hue or saturation of an individual

21    color, by selecting an independent color hue control delta

22    value or an independent color saturation control value.

23          Or as claim eight recites, the method of claim one,

24    whereby said independent color hue control delta value is

25    completely independent and separate from said independent color

Case 6:15-cv-00973-JRG-JDL   Document 66   Filed 12/15/16   Page 59 of 71 PageID #:  653

LONE STAR TECHNOLOGICAL INNOVATIONS, LLC vs SHARP ELECTRONICS CORPORATION, ET AL
CLAIM CONSTRUCTION HEARING,  on 11/10/2016                                    59

1    saturation control value.

2              It's a mouthful, but with regard to claim one of the

3    '435 specification or -- excuse me -- with regard to claim one,

4    the '435 specification describes an embodiment that might, for

5    example, utilize one algorithm to effectuate a claim in either

6    hue or saturation, but only one can be selected at a time.

7              And this is not on the slide, but it is at '435

8    column eight, lines 14 to 24, where the patent -- the

9    specification cites according to the operative result Step E is

10   that of selecting either an independent color hue control delta

11   value.

12             It says HCR, which I believe means hue, color, or

13   independent color saturation delta value, S being -- sorry,

14   saturation color, which is not a zero, is where only one of the

15   following is selected at a given time.

16             Whereas, with regards to claim eight, the

17   specification describes alternative algorithms where hue

18   control delta -- where a hue control delta value is completely

19   independent and separate from the saturation control values

20   affording more dynamic color changes.

21             In other words, the hue control delta value is not a

22   function of the saturation control value as claimed by

23   dependent eight.

24             So, for example, if one were to change one individual

25   color red by 20 percent and then change saturation of that same

Case 6:15-cv-00973-JRG-JDL   Document 66   Filed 12/15/16   Page 60 of 71 PageID #:  654

LONE STAR TECHNOLOGICAL INNOVATIONS, LLC vs SHARP ELECTRONICS CORPORATION, ET AL
CLAIM CONSTRUCTION HEARING,  on 11/10/2016                                                    60

1   individual color by 10 percent, or if in the same example one

2   were to decrease the saturation of red by 30 percent and then

3   change the saturation by 10 percent, in either case saturation

4   will change the same amount in that because hue and saturation

5   control deltas are completely and independent -- I'm sorry --

6   completely independent and separate, so completely independent

7   and separate means not a function of one another.

8            This is all we have on this point, Your Honor.

9            THE COURT:  Well, what I think the -- my concern here

10  was really more focused on -- and I'm not sure you've addressed

11  it -- but Step D of claim one, in that it talks about by

12  separately evaluating independent color hue control functions

13  or independent color saturation control functions.

14           And my concern was that it appeared to render claim

15  eight, whereby said independent color hue control delta value

16  clearly independent and separate seemed to render that

17  superfluous.  It's already in claim one, but I may be missing

18  something.

19           MR. SABA:  Your Honor, I think the focus is on and

20  just discussing differences between claim one and claim eight

21  is actually the hue control delta value; where, I guess, as I

22  understand it, a delta control value can be -- can exist in one

23  program or -- sorry -- one algorithm that can be used to change

24  hue or saturation; whereas, claim eight describes two separate

25  independent algorithms.

Case 6:15-cv-00973-JRG-JDL   Document 66   Filed 12/15/16   Page 61 of 71 PageID #:  655

LONE STAR TECHNOLOGICAL INNOVATIONS, LLC vs SHARP ELECTRONICS CORPORATION, ET AL
CLAIM CONSTRUCTION HEARING,  on 11/10/2016                                            61

 1          I think we provided an example in our reply brief of

 2     a different implementation where the control delta values are

 3     separate.

 4          THE COURT:  Okay.  All right.  Any response?

 5          MR. HOLOHAN:  Very briefly, Your Honor.

 6          Just in terms of the differentiation between claim

 7     one and claim eight, going back to column eight of the '435

 8     patent, Mr. Saba read from lines 14 to about 24 of that column.

 9          If you keep reading in that column, you'll see as

10     previously indicated above, a main aspect of the novelty of the

11     present invention -- those are the magic phrase that means that

12     we're talking about a claim limitation -- is that enabling one

13     to independently control, that is to independently change or

14     adjust, by increasing or decreasing hue or saturation of each

15     individual color in a real time digital video image without

16     affecting the hue or saturation of any other color in the same

17     real time digital video image.

18          And that, I think, supports the main point in our

19     brief, and as Your Honor seemed to indicate, claim one already

20     requires this limitation.  Claim eight doesn't add anything.

21     It is superfluous.  It is confusing and, therefore, it's

22     indefinite.

23          THE COURT:  All right.  Thank you.

24          MR. HOLOHAN:  Thank you.

25          THE COURT:  So let's see.  I guess the last term is

Case 6:15-cv-00973-JRG-JDL   Document 66   Filed 12/15/16   Page 62 of 71 PageID #:  656

LONE STAR TECHNOLOGICAL INNOVATIONS, LLC vs SHARP ELECTRONICS CORPORATION, ET AL
CLAIM CONSTRUCTION HEARING,  on 11/10/2016                                    62

 1   viewer.

 2            MR. TING:  Thank you, Your Honor.  I'll be quick on

 3   this one.

 4            We understand that Plaintiffs believe that this does

 5   not require construction.  The Defendants' proposed

 6   construction is that viewer be given its precise definition,

 7   which is to be an actual person.

 8            And as we see here in claim 17, in C it says, A

 9   viewer of said real time digital image display device operating

10   said master control device, and it goes on.

11            The key here is, if we go to the next slide, the

12   Defendants' construction of viewer as a person is fully

13   supported by the specification and, in fact, is the only

14   conceivable interpretation of what a viewer is.

15            So as we see on slide 80 for columns 26, lines 21

16   through 65, we see every time it's being referred to as either

17   a user or a viewer.  And just for example, there's terms a user

18   or viewer of a real time digital video image display device,

19   such as a television, selects to independently change hue.  Or,

20   for example, you know, selected by the user or viewer, or

21   within seconds, following the user or viewer pushing or

22   turning.

23            Now, Your Honor, the importance here for why the term

24   should actually be construed as a person instead of, you know,

25   not having construction, just having people understand that

Case 6:15-cv-00973-JRG-JDL  Document 66  Filed 12/15/16  Page 63 of 71 PageID #:  657

LONE STAR TECHNOLOGICAL INNOVATIONS, LLC vs SHARP ELECTRONICS CORPORATION, ET AL
CLAIM CONSTRUCTION HEARING,  on 11/10/2016                                                    63

1  it's a person, is not just, you know, for the jury and not to

2  try to avoid confusion given the term viewer is, you know,

3  nowadays could be -- someone could interpret that or be

4  confused that viewer could mean a software browser or something

5  that's not a person.

6          Now, more importantly why is because -- and let me

7  just go through some more intrinsic support first, which is

8  there's no confusion a viewer has to be a person and can't be,

9  you know, a browser or software that allows someone to view

10  pictures because it requires a natural physical activity to

11  take place.

12          So '435 patent, column 26, lines 21 through 37, by

13  pushing or turning, you know, a dial; at column 26, lines 48

14  through 65, within seconds following the user or viewer pushing

15  or turning, you know, all things that need to be done by a

16  person.

17          And next slide.  And, you know, as Dr. Menczel, he

18  agrees, you know.  Now, at first he said -- I asked him, What

19  would a person of ordinary skill in the art understand the term

20  viewer to mean.  He says, Exactly what it says.

21          Follow up, But if I was going to ask you to tell me

22  what the viewer is, what would you say?  He said, Somebody that

23  views.

24          Did you say somebody that views?  Uh-huh.

25          So a person that view; correct?  Correct.

Case 6:15-cv-00973-JRG-JDL   Document 66   Filed 12/15/16   Page 64 of 71 PageID #:  658

LONE STAR TECHNOLOGICAL INNOVATIONS, LLC vs SHARP ELECTRONICS CORPORATION, ET AL
CLAIM CONSTRUCTION HEARING,   on 11/10/2016                                        64

1              Okay.  And then it appears that the Plaintiffs do not

2    disagree that a viewer is a person.  Their position appears to

3    be that the Court does not -- that the Courts are not and

4    should not be required to construe every limitation present.

5              And in their reply from -- of the construction brief,

6    no construction is necessary for viewer as the term will be

7    readily understandable to the jury; however, Your Honor, it

8    does need to get to the jury for at least this claim.

9              Because a viewer is a person, claim 17 is invalid.

10   If we look at -- if we look at claim 17, claim 17 is an -- it's

11   an apparatus patent.  It's a system claim.

12             Now, viewer as a person cannot be part of the system.

13   The viewer would be performing a method step because it says a

14   viewer of said real time digital video image display device

15   operating said master control device for selecting to

16   independently change the hue or the saturation of an individual

17   color.

18             Okay.  If you'll go back to that last slide, back to

19   84.  In the IPXL Holdings case, there was the following claim:

20   The system of claim two, including an input means, wherein the

21   predicted transaction information comprises both a transaction

22   type and transaction parameters associated with that

23   transaction type, and the user uses the input means to either

24   change the predicted transaction information or accept the

25   displayed transaction type and transaction parameters.

Case 6:15-cv-00973-JRG-JDL   Document 66   Filed 12/15/16   Page 65 of 71 PageID #:  659

LONE STAR TECHNOLOGICAL INNOVATIONS, LLC vs SHARP ELECTRONICS CORPORATION, ET AL
CLAIM CONSTRUCTION HEARING,  on 11/10/2016                                    65

1              We have a claim that is identical in structure to the

2    one we have now.  We have a system claim that requires an

3    action by an actual person.

4              Next slide, please.  So the IPXL court held the

5    following:  Thus, it is unclear whether infringement of claim

6    25 occurs when one creates a system that allows the user to

7    change the predicted transaction information or to accept the

8    displayed transaction, or whether infringement occurs when the

9    user actually uses the input means to change transaction

10   information or uses the input means to accept a displayed

11   transaction.

12             Because claim 25 recites both a system and the method

13   for using the system, it does not apprise a person of ordinary

14   skill in the art of its scope and it is invalid under section

15   112, paragraph two.

16             And that is why the Defendants request that --

17   respectfully request that viewer actually be construed and be

18   given the construction of -- that's consistent with the

19   intrinsic evidence, which is the person, so that we can try to,

20   you know, reduce the burden on our clients as much as possible

21   and can serve as resources both for the Court and for both

22   parties.

23             THE COURT:  All right.  Thank you.  Plaintiff respond

24   to -- really what I want to hear is the response to the

25   contention that this claim should a viewer be a person is

Case 6:15-cv-00973-JRG-JDL  Document 66  Filed 12/15/16  Page 66 of 71 PageID #:  660

LONE STAR TECHNOLOGICAL INNOVATIONS, LLC vs SHARP ELECTRONICS CORPORATION, ET AL
CLAIM CONSTRUCTION HEARING,  on 11/10/2016                                    66

 1  invalid.

 2          MR. LEE:  Your Honor, this issue has been raised for

 3  the first time by the Defendants.  They -- this is the first

 4  time we've heard of it.

 5          They were required to disclose their indefinite

 6  arguments under Rule 33 disclosures on June 10th.  We went

 7  through the whole claim construction process exchanging

 8  proposed constructions.  They proposed the term viewer.  Not

 9  once have they mentioned this argument.  It's only here today

10  for the first time at this Markman hearing they have raised it.

11  The Plaintiffs are not in a position with this argument right

12  now to respond.

13          THE COURT:  All right.  Response?

14          MR. TING:  Your Honor, we are not asking at this

15  time, you know, for the Court to find the patent's invalid.

16  We're just asking for the construction of a person so we can

17  move down the path towards trying to resolve this.

18          We're not -- we are not attempting to ambush, you

19  know, Plaintiffs in any way.  We just want the construction to

20  be a person.  In fact, we contacted them after the deposition

21  testimony and asked them if they would stipulate to this

22  construction and they refused.

23          THE COURT:  All right.  Well, -- all right.  I don't

24  think there's anything further I need to cover on this.

25          All right.  I believe that concludes the terms that

Case 6:15-cv-00973-JRG-JDL  Document 66  Filed 12/15/16  Page 67 of 71 PageID #:  661

LONE STAR TECHNOLOGICAL INNOVATIONS, LLC vs SHARP ELECTRONICS CORPORATION, ET AL
CLAIM CONSTRUCTION HEARING,  on 11/10/2016                                    67

1    were in dispute today.  Anything further from the Plaintiff?

2              MR. SABA:  Nothing at this time, Your Honor.

3              THE COURT:  Anything further from the Defendant?

4              MR. HOLOHAN:  No, Your Honor.

5              MR. TING:  No, Your Honor.

6              THE COURT:  Let me do mention one thing.  There was

7    some discussion here about tutorials, software, code, and I'm

8    assuming that that is in process of being produced or being

9    sought.  Is the Plaintiff seeking software from the

10   manufacturers or the -- of these color components and these

11   devices?

12             MR. LEE:  Your Honor, we are.  In fact, we've asked

13   Sharp Corporation or Sharp to provide the documentation from

14   Sharp Corporation, but with the parent in Japan, Sharp is

15   taking the position that it's all through third party chip

16   makers.

17             We are in the process of severing subpoenas to the

18   chip makers that have been identified in interrogatories by the

19   Defendants.  The chip makers -- or most of the chip

20   manufacturers are outside the United States, so it will take

21   time.

22             THE COURT:  Okay.  Well, I'm just encouraging the

23   expeditious conduct here.  Your deadline for fact discovery, as

24   far as I can tell, I believe is March 27th, so that will be

25   here rapidly.

Case 6:15-cv-00973-JRG-JDL  Document 66  Filed 12/15/16  Page 68 of 71 PageID #: 662

LONE STAR TECHNOLOGICAL INNOVATIONS, LLC vs SHARP ELECTRONICS CORPORATION, ET AL
CLAIM CONSTRUCTION HEARING,  on 11/10/2016                                    68

1          So I'm just saying we're here at Claim Construction

2   and I'm hearing we don't have software produced and haven't

3   been looked at, and I don't know whether contentions will

4   change, so you really need to get on that and get that looked

5   at and lined out quickly, you know.

6          Your trial date is in August, I believe, of next

7   year, which would put your pretrial in July, you know.

8   Dispositive motions, it looks like they're due in May, so, you

9   know, I just -- you need to get on that and get that done

10  quickly because we don't want to extend this out, you know.  It

11  just needs to get done, so -- okay.  All right.

12         Anything from the Defendants on this?

13         MR. HOLOHAN:  On that point, Your Honor?

14         THE COURT:  Yes.

15         MR. HOLOHAN:  Just briefly, and I don't know if there

16  actually is a dispute.  In any case, just to be clear, Sharp

17  Corporation is not a party to the case.  Sharp Electronic

18  Corporation is the party, and we've produced the technical

19  documentation that we have.

20         A long time ago, several weeks, if not months ago, we

21  identified the suppliers of the chips and also produced

22  technical documentation showing the chips that were in the

23  accused products on the part of SEC, so they have had this

24  information.  I just don't want there to be an impression that

25  SEC is holding up that process.

```
 1              THE COURT:  All right.  All right.  Well, again, I

 2   don't know how much software source code will implicate the

 3   infringement contentions here and the experts.

 4              But to the extent that that is part of this case, I

 5   guess my encouragement is to move that along, get that on the

 6   third parties, whoever has it, look at it, get your experts to

 7   weigh in or your contentions lined out, however that falls.

 8              I know that a lot of times that can be an involved

 9   process, and I'm just -- you know, we're sitting here in

10   November with a trial date in August and, you know, dispositive

11   motions due in May, so I'm just a little concerned about where

12   we are here.

13              But get that sought, get it secured and reviewed

14   under whatever protective orders are appropriate.  Obviously

15   there's one in place here; correct?  So --

16              MR. SABA:  That's correct, Your Honor.

17              THE COURT:  So the protective order will be in place,

18   and hopefully that can be produced without difficulty, and

19   so --

20              All right.  There being nothing further, thank you

21   for your arguments.  We'll get your rulings as soon as we can.

22   Adjourned.

23              COURT SECURITY OFFICER:  All rise.

24              (Hearing concluded.)

25
```

Case 6:15-cv-00973-JRG-JDL   Document 66   Filed 12/15/16   Page 70 of 71 PageID #:  664

LONE STAR TECHNOLOGICAL INNOVATIONS, LLC vs SHARP ELECTRONICS CORPORATION, ET AL
CLAIM CONSTRUCTION HEARING,   on 11/10/2016                                    70



Case 6:15-cv-00973-JRG-JDL   Document 66   Filed 12/15/16   Page 71 of 71 PageID #:  665

LONE STAR TECHNOLOGICAL INNOVATIONS, LLC vs SHARP ELECTRONICS CORPORATION, ET AL
CLAIM CONSTRUCTION HEARING,   on 11/10/2016                                    71

1                             CERTIFICATION

2               I HEREBY CERTIFY that the foregoing is a true and

3     correct transcript from the stenographic notes of the

4     proceedings in the above-entitled matter to the best of my

5     ability.

6

7     _____        Date: 11/10/16
      Tammy L. Goolsby, CSR
8     Deputy Official Court Reporter
      State of Texas No.:  3101
9     Expiration Date:  12/31/16

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25